Mark D. SANFORD, Appellant,

v.

MEADOW GOLD DAIRIES, INC., Appellee,

State of Iowa ex rel. Civil Reparations Trust Fund, Intervenor–Appellee.

No. 94–271.

Supreme Court of Iowa.

July 19, 1995.

Kevin M. Kirlin of Roehrick, Hulting & Moisan, Des Moines, for appellant.

James H. Gilliam of Brown, Winick, Graves, Baskerville & Schoenebaum, P.L.C., Des Moines, for appellee Meadow Gold Dairies, Inc.

Thomas J. Miller, Atty. Gen., Craig Kelinson, Sp. Asst. Atty. Gen., and Richard E. Mull, Asst. Atty. Gen., for appellee State.

Considered by HARRIS, P.J., and LAVORATO, SNELL, ANDREASEN, and TERNUS, JJ.

HARRIS, Justice.

There are a number of issues in this dispute arising from the discharge of an employee. The employee alleges he was fired for exercising his rights under the workers' compensation law. The employer insists the firing resulted from absenteeism and poor performance. Issues include claims of preemption, the admissibility of evidence of collateral recoveries, and the propriety of a punitive damage award. We affirm on both appeals.

Plaintiff Mark D. Sanford was hired as a freezer operator by defendant Meadow Gold Dairies, Inc. On Friday, March 10, 1989, the tenth working day of his employment, he suffered an injury when his right thumb was caught in a machine that filled ice cream containers.

Sanford received emergency room treatment at a hospital selected by Meadow Gold. On the following Monday, March 13, he was examined by James Blessman, a physician specified by Meadow Gold. Blessman approved Sanford's return to work, subject to refraining from using his right hand. Sanford reinjured his hand on the job on May 15, and was told to stay off work pending his referral to a specialist.

During this time Meadow Gold thought Sanford suffered a mere sprain, would lose no time from work, and would suffer no permanent injury. On March 29 Sanford's treating physician, Scott B. Neff, referred him for physical therapy. Sanford thereafter missed work and even a number of therapy appointments, claiming he did so because of pain.

The nature and extent of Sanford's injuries are hotly disputed. Meadow Gold suspected Sanford was malingering, sought to stop his healing-period benefits, questioned his diagnosis, and contemplated private surveillance. Meadow Gold even suspected Sanford deliberately broke surgical pins in his right hand. Meadow Gold also thought Sanford lied to his treating physicians regarding work conditions in order to obtain an advantageous work release. This belief developed when Meadow Gold learned that Sanford told Dr. Neff (Sanford said he merely incorrectly guessed) his job called for him to lift weights of 100 to 125 pounds. The actual weight was an occasional fifty pounds. Finally, the company thought Sanford had a bad attitude because of his refusal to work overtime. There is however no record of any disciplinary action in Sanford's company file, or in the record.

Sanford thinks it was Meadow Gold's attitude that was bad, believing the company was oblivious of the real pain he was suffering and was improperly bent on denying him the benefits to which he was entitled. He points out that his last treating physician indicated he suffered a forty-six percent impairment of his right upper extremity.

On August 30 Sanford underwent surgery on his hand and since then has not worked at Meadow Gold. He was fired on February 27, 1990, when he reported for work.

Disregarding one claim he later withdrew, Sanford's suit was for (1) wrongful discharge, and (2) fraudulent misrepresentation. At the close of all evidence the trial court sustained Meadow Gold's motion for a directed verdict

on the fraudulent misrepresentation count. The jury thereafter found for Sanford on his claim for wrongful discharge in violation of public policy, awarding $500 for past mental pain and suffering (though nothing for either past or future loss of wages) and $25,000 in punitive damages. Other facts can be more appropriately recited as they relate to specific assignments of error.

I. Prior to bringing this action, Sanford settled his workers' compensation claims for healing and partial disability benefits. He also settled a civil lawsuit against the manufacturer of the machine that injured him. The admissibility of evidence of these recoveries during this trial is one of the issues on appeal.

■ Prior to trial Sanford moved in limine to exclude evidence relating to his workers' compensation benefits, and also to exclude evidence of his recovery for the same injuries in the products liability suit because Meadow Gold was not entitled to a set off under Iowa Code section 668.14 (1993). It is true that workers' compensation benefits must be disregarded in determining damages in a retaliatory discharge suit. *Clarey v. K–Products, Inc.*, 514 N.W.2d 900, 904 (Iowa 1994). Recognizing this rule, the trial court conditionally sustained the motion in limine. The court however cautioned that the ruling was subject to review if the jury heard inconsistent statements regarding the excluded evidence.

This caveat proved to be well advised; the trial court did reverse its pretrial ruling and, over Sanford's objections, allowed evidence of these collateral recoveries. Sanford assigns reception of this evidence as error.

■ As a general rule decisions concerning relevance and materiality of evidence are discretionary. *Iowa–Illinois Gas & Elec. Co. v. Black & Veatch*, 497 N.W.2d 821, 825–26 (Iowa 1993). We reverse only if the trial court clearly abused its discretion to the prejudice of the complaining party. *Id.* at 826.

■ Sanford's retaliatory discharge claim rests on our holdings that public policy is violated when an employee, even an employee at-will, is discharged as a result of seeking workers' compensation benefits. An essential element of the claim is a showing concerning the employer's specific motivation in firing; it must appear that the discharge was prompted by the filing of the workers' compensation claim. *See Smith v. Smithway Motor Xpress*, 464 N.W.2d 682, 685 (Iowa 1990); *Springer v. Weeks & Leo Co.*, 429 N.W.2d 558, 559 (Iowa 1988).

To establish Meadow Gold's intent, Sanford introduced evidence of Meadow Gold's officers' actions while his workers' compensation claim was being processed. This evidence indicated that Meadow Gold officers urged or instructed the insurer to suspend or disrupt compensation payments, and urged the surveillance previously mentioned. Sanford's position at trial was that Meadow Gold took these steps to reduce the costs related to workers' compensation exposure.

■ It was in response to this showing that the challenged evidence of the other recoveries was offered. Meadow Gold introduced evidence that Sanford's claim was resolved without rancor and without a hearing. Sanford admitted he had the opportunity to pursue a statutory claim for penalty and interest but withdrew it as a part of the settlement in resolving his claim. He admitted he received all benefits for weekly compensation to which he was entitled.

We think the trial court did not abuse its discretion in receiving the evidence. As the trial unfolded this evidence became appropriate in order to place Sanford's evidence in context. It was particularly appropriate in view of Sanford's testimony regarding the physical pain and suffering he endured as a result of the work injury. Without the challenged evidence (that he had been fully compensated as a result of his injury) the jury would have been misled and prejudiced. As a part of his evidence for emotional damages, Sanford also testified he suffered emotional distress as a result of the loss of earnings due to his termination. He thereby opened the door to admitting evidence which established his benefits were paid within a few months of his termination.

The assignment is without merit.

II. Sanford also assigns error in the trial court ruling that dismissed his fraudulent misrepresentation count. In this count Sanford claimed Meadow Gold deliberately misled him regarding his employment status, causing him to pass up a grievance procedure. During Sanford's employment, a local labor union was certified as his exclusive representative for collective bargaining. The bargaining agreement provided that all newly-hired employees were subject to discharge anytime within the initial thirty-day period. Thereafter they could be fired only for "just cause." The agreement also provided that disputes were to be exclusively resolved through a grievance procedure ending in arbitration.

Sanford claims his status as a nonprobationary employee was misrepresented to him by officials of Meadow Gold, who told him the union and management agreed to extend his probation period. Sanford learned through discovery that he was a nonprobationary employee and claims he did not avail himself of the available grievance procedure because he had been misled.

In dismissing this count at the close of all evidence, the trial court accepted Meadow Gold's argument that state courts lack jurisdiction to consider such an issue because all disputes interpreting collective bargaining agreements are preempted under section 301(a) of the labor management relations (Taft–Hartley) act of 1947, 29 U.S.C. § 185(a) (1988). We recently explained preemption under this federal statute in *Barske v. Rockwell Int'l Corp.,* 514 N.W.2d 917, 920–22 (Iowa 1994).

We do not at this point decide the merits of the preemption claim because we elect to affirm on a different ground. *See Bensley v. State,* 468 N.W.2d 444, 445 (Iowa 1991) (a trial court can be affirmed on any ground appearing in the record whether urged in trial court or not).

[redacted] A showing of resulting injury or damages is an element in a fraudulent misrepresentation case. *Robinson v. Perpetual Serv. Corp.,* 412 N.W.2d 562, 565 (Iowa 1987). Sanford did not show any damages on this count beyond those already considered and either allowed or rejected on the retaliatory discharge count. The jury found that Sanford, who found other employment, lost no past or future wages as a result of this firing. We have often held there can be but one satisfaction for an injury, even though there may be plural causes for recovery. *Wadle v. Jones,* 312 N.W.2d 510, 514 (Iowa 1981). *See also* 22 Am.Jur.2d *Damages* § 35 (1988). We reject the assignment because to allow him any further recovery on this record would be duplicative.

III. We have already mentioned that the jury awarded $25,000 in punitive damages. In a special verdict it was found that Meadow Gold's conduct, giving rise to the award, was not directed specifically at Sanford. Accordingly, pursuant to Iowa Code section 668A.1(1)(b), a substantial portion of the award must be paid to Iowa's civil reparations fund. Sanford challenges the special verdict,[1] claiming no evidence supported it. We however think the civil reparations fund, which intervened as appellee on appeal, is correct in insisting that the submission of the issue to the jury was correct. *Shepherd Components v. Brice Petrides–Donohue & Assoc. Inc.,* 473 N.W.2d 612, 618 (Iowa 1991) (jury question generated by evidence from which jury could conclude the conduct might well be the same if a different plaintiff were involved). Taking the evidence in the light most consistent with the verdict, we cannot say as a matter of law that Sanford was singled out.

The assignment is without merit.

IV. We also reject Sanford's assignment challenging denial of his motion for a new trial. It was addressed to the special verdict claiming that he suffered no past or future loss of wages. From Sanford's own testimony the jury could well have found that his continued employment at Meadow Gold was impossible by reason of his injury and thus he was not damaged by the firing. Because

1. Just prior to submission of the appeal, Meadow Gold withdrew its separate challenge to submission of the punitive damage award.

**414**

we find no abuse of discretion in the challenged ruling we reject the assignment.

V. It remains only to consider Meadow Gold's contention on cross-appeal that Sanford's wrongful discharge claim should have been dismissed because the subject matter is preempted by federal statute. This requires us to consider the issue we passed in division II of this opinion: whether, under 29 U.S.C. § 185(a) (the labor management relations act), state courts lack subject matter jurisdiction.

We visited the same question in some detail in *Conaway v. Webster City Products Co.*, 431 N.W.2d 795 (Iowa 1988). We noted that retaliatory discharge suits are not preempted because "these actions [do] not require an interpretation of the collective-bargaining agreement." *Id.* at 799.

We think preemption does not extend to this dispute because there is really no argument concerning the terms or effect of the union contract. The union contract served only as background for the issues here. All controverted issues involved routine state law.

The trial court did not err in refusing to dismiss the retaliatory discharge suit on the basis of preemption.

Tax the costs three-fourths to Sanford and one-fourth to Meadow Gold.

**AFFIRMED ON BOTH APPEALS.**