**Leroy A. HANSEN, Plaintiff,**

v.

**SIOUX BY-PRODUCTS a/k/a Darling International, Defendant.**

**No. C 96-4112-MWB.**

United States District Court, N.D. Iowa, Western Division.

Dec. 16, 1997.

---

Christopher M. Bikus, Roger J. Miller, McGrath, North, Mullin, Kratz, P.C., Omaha, NE, Jeffrey Mohrhauser, Rawlings, Nieland, Probasco, Killinger, Ellwanger, Jacobs & Mohrhauser, Sioux City, IA, for Defendant.

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Dennis M. McElwain, Smith & McElwain Law Office, Sioux City, IA, for Plaintiff.

BENNETT, District Judge.

## TABLE OF CONTENTS

*I.*   *INTRODUCTION* ............................................. 1257
    A.   *Procedural Background* ............................ 1257
    B.   *Factual Background* ............................... 1258

*II.*   *LEGAL ANALYSIS* ...................................... 1259
    A.   *Standards For Summary Judgment* ................. 1259
    B.   *The ADA Claim* ................................... 1261
       1.   *Hansen's concession* ......................... 1261
       2.   *Hansen's request for remand* ................. 1261
          a.   *The applicable statute* ................... 1261
          b.   *Application of the statute* ................ 1263
    C.   *Retaliatory Discharge* ........................... 1264
       1.   *Lack of any filing for workers' compensation benefits* ............... 1265
       2.   *Lack of a causal connection* ................. 1267

*III.*   *CONCLUSION* ........................................ 1270

## I. INTRODUCTION

### A. Procedural Background

Was it an unfortunate coincidence that the plaintiff was fired for poor work performance the same day he was injured on the job, or is something more sinister afoot in this retaliatory discharge case? Can the plaintiff generate a genuine issue of material fact that he is a qualified person with a disability as the result of the injury suffered the day he was fired, such that he can overcome summary judgment on the federal disability discrimination claim upon which this court's removal jurisdiction is founded? If he cannot, should the court remand plaintiff's state-law retaliation claim to the state court in which this lawsuit originated? These are the questions with which the court must grapple in ruling on the defendant's summary judgment motion.

Plaintiff Leroy Hansen filed this lawsuit in the Iowa District Court for Woodbury County on October 15, 1996, alleging that he was terminated from his employment in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12001 *et seq.,* and Iowa public policy. The defendant is Hansen's former employer, Sioux By–Products, which is a production facility in Woodbury County, Iowa, of Darling International, Inc., a Delaware corporation with its principal place of business in Dallas, Texas.[1]

Hansen alleges that he was a production worker at Sioux By–Products until he was terminated in late October of 1995. He also alleges that he was terminated shortly after he injured his left arm and elbow in the course of his employment. In Count I of his

---

1. Sioux By–Products' answer states that its proper name is Darling International, Inc., d/b/a Sioux By–Products. However, the parties have continued to identify the defendant as Sioux By–Products, and the court will do the same.

complaint, Hansen alleges that Sioux By–Products has refused to continue his employment since the date of his injury, despite his offers to continue his services, because of his physical impairments in violation of the ADA, specifically, 42 U.S.C. § 12112. In Count II of his complaint, Hansen asserts that he was terminated on the same day he was injured at work in retaliation for reporting his injury and seeking medical care under Sioux By–Products' workers' compensation coverage. Thus, Count II asserts wrongful discharge in violation of Iowa's public policy against retaliation for seeking workers' compensation benefits.

On November 21, 1996, Sioux By–Products removed this action to this federal court pursuant to 28 U.S.C. § 1441 on the ground that the action presented a federal question—the ADA claim—over which this court would have had original jurisdiction.[2] Also on November 21, 1996, Sioux By–Products filed its answer to Hansen's complaint denying Hansen's claims and asserting affirmative defenses, including Sioux By–Products' contentions that Hansen is not a qualified individual with a disability within the meaning of the ADA and that Hansen failed to mitigate his damages.

The parties proceeded with discovery. On October 15, 1997, the deadline for dispositive motions,[3] Sioux By–Products moved for summary judgment on both of Hansen's claims. Sioux By–Products asserts that Hansen cannot generate a genuine issue of material fact that he is a qualified individual with a disability within the meaning of the ADA, because he is not substantially limited in any major life activity. Consequently, Sioux By–Products contends that it is entitled to summary judgment on Hansen's ADA claim in Count I of his complaint. Sioux By–Products has also moved for summary judgment on Hansen's retaliatory discharge claim in Count II, on the ground that Hansen had not filed any workers' compensation claim at the time he was discharged. Sioux By–Products also seeks summary judgment on Hansen's retaliatory discharge claim on the ground that there is no genuine dispute that Hansen was fired at the end of his probationary period for poor work performance. Sioux By–Products supports this argument with an affidavit averring that the decision to terminate Hansen was made the day before his injury.

Hansen responded to the motion for summary judgment on December 5, 1997, resisting Sioux By–Products' entitlement to summary judgment, at least in part. Neither party requested oral arguments on the motion.

### B. Factual Background

The court will not attempt here an exhaustive statement of the undisputed and disputed facts of the case. Instead, the court will discuss disputed and undisputed facts to the extent necessary to resolve the pending motion for summary judgment in its legal analysis. Nonetheless, a brief statement of the factual backdrop for Hansen's claims is provided here to place the court's legal analysis in context.

The parties agree that Hansen applied for a position as a general laborer at Sioux By–Products on September 25, 1995. Following a pre-employment physical examination, which disclosed no impairments, Hansen was hired, effective October 2, 1995. Hansen's duties included backing up trucks, breaking down cardboard boxes, and generally cleaning up the facility.

About 2:30 a.m. on October 26, 1995, Hansen was breaking down a cardboard box when he injured his left elbow. Hansen reported the injury to his foreman, Jim Johnson. Johnson directed Hansen to the local hospital for treatment. According to Hansen, Johnson also told him the company's insurance would take care of everything. However, either at that time or when Hansen returned from the hospital with his arm in a sling, Johnson informed Hansen that he was terminated and need not return to work the

---

**2.** Sioux By–Products did not assert diversity of citizenship as a ground for removal, although its answer asserts that Iowa is neither the state in which it is incorporated or in which it has its principal place of business. Other requirements for removal on the ground of diversity may not have been met. *See* 28 U.S.C. § 1441(a); 28 U.S.C. § 1332.

**3.** Trial of Hansen's claims is scheduled to begin on March 9, 1998.

next day. Although it appears Hansen was not given any reason for his termination at the time, Sioux By–Products has since stated that the reason was Hansen's poor work performance during his probationary period.

There was a labor contract between Sioux By–Products and UFCW Local 1142 in effect at the time of Hansen's employment with Sioux By–Products. That contract provided, in pertinent part, as follows:

### ARTICLE XII—SENIORITY

Employees shall acquire seniority rights when they have worked a total of thirty (30) days within the sixty (60) calendar day period following their initial employment. If they are retained in the employ of the company beyond the said thirty (30) days, their seniority shall be established from the first of the said thirty (30) days.

Probationary employees may be terminated without cause and there will be no responsibility for re-employment of probationary employees if they are laid off or discharged during the thirty (30) day probationary period.

Plaintiff's Exhibit 1 In Resistance To Defendant's Motion For Summary Judgment. The parties agree that Hansen was a probationary employee, pursuant to the terms of this agreement, at the time he was discharged. However, they dispute precisely when Hansen's probationary period ended, a matter to which the court will return in its legal analysis.

According to an affidavit submitted by Sioux By–Products, the decision to terminate Hansen was made on October 25, 1995, as the end of Hansen's probationary period approached. Affidavit of Brad Frost, Defendant's Exhibit B. That decision, the affidavit avers, was made at a meeting of Brad Frost, the general manager of Sioux By–Products in Sioux City, Iowa, Larry Meier, the plant manager, and Jim Johnson, the third shift supervisor who was Hansen's direct supervisor. *Id.* Brad Frost is responsible for making all hiring and firing decisions at the Sioux City facility. Sioux By–Products contends that the decision to fire Hansen was based on his poor work performance and that Frost instructed Johnson to inform Hansen of that decision. Johnson did so the next day at some time after Hansen was injured at work. There is no evidence in the record that Hansen had received any prior notice that his work performance was inadequate.

Since his termination by Sioux By–Products, Hansen has performed a variety of other jobs, including baling hay, and drilling holes into pieces of steel, and he has applied for a job as a cement finisher. Hansen also spent a period of time caring for his sister when she was ill. Although he continues to complain of pain and other difficulties with his arm and elbow, Hansen is able to drive, shop, work, and otherwise care for himself.

## II. LEGAL ANALYSIS

### A. Standards For Summary Judgment

This court has considered in some detail the standards applicable to motions for summary judgment pursuant to FED.R.CIV.P. 56 in a number of recent decisions. *See, e.g., Dirks v. J.C. Robinson Seed Co.,* 980 F.Supp. 1303 (N.D.Iowa 1997); *Laird v. Stilwill,* 969 F.Supp. 1167, 1172–74 (N.D.Iowa 1997); *Rural Water Sys. # 1 v. City of Sioux Center,* 967 F.Supp. 1483, 1499–1501 (N.D.Iowa 1997); *Tralon Corp. v. Cedarapids, Inc.,* 966 F.Supp. 812, 817–18 (N.D.Iowa 1997); *Security State Bank v. Firstar Bank Milwaukee, N.A.,* 965 F.Supp. 1237, 1239–40 (N.D.Iowa 1997); *Lockhart v. Cedar Rapids Community Sch. Dist.,* 963 F.Supp. 805 (N.D.Iowa 1997). Thus, the court will not consider those standards in detail here. Suffice it to say that Rule 56 itself provides, in pertinent part, as follows:

Rule 56. Summary Judgment

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon. ... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

FED.R.CIV.P. 56(b) & (c) (emphasis added). Applying these standards, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.,* 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). As to whether a factual dispute is "material," the Supreme Court has explained, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Beyerbach v. Sears,* 49 F.3d 1324, 1326 (8th Cir.1995); *Hartnagel,* 953 F.2d at 394.

Because this is an employment discrimination and retaliation case, it is well to remember that the Eighth Circuit Court of Appeals has cautioned that "summary judgment should seldom be used in employment-discrimination cases." *Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir.1994) (citing *Johnson v. Minnesota Historical Soc'y,* 931 F.2d 1239, 1244 (8th Cir.1991); *Hillebrand v. M–Tron Indus., Inc.,* 827 F.2d 363, 364 (8th Cir.1987), *cert. denied,* 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989)). *See also Snow v. Ridgeview Medical Ctr.,* 128 F.3d 1201, 1202 (8th Cir.1997) (citing *Crawford* ); *Helfter v. United Parcel Serv., Inc.,* 115 F.3d 613, 615 (8th Cir.1997) (quoting *Crawford* ); *Chock v. Northwest Airlines, Inc.,* 113 F.3d 861, 862 (8th Cir.1997) ("We must also keep in mind, as our court has previously cautioned, that summary judgment should be used sparingly in employment discrimination cases," citing *Crawford* ); *Smith v. St. Louis Univ.,* 109 F.3d 1261, 1264 (8th Cir.1997) (quoting *Crawford* ); *Hardin v. Hussmann Corp.,* 45 F.3d 262 (8th Cir.1995) ("summary judgments should only be used sparingly in employment discrimination cases," citing *Haglof v. Northwest Rehabilitation, Inc.,* 910 F.2d 492, 495 (8th Cir.1990); *Hillebrand,* 827

F.2d at 364). Summary judgment is appropriate in employment discrimination cases only in "those rare instances where there is no dispute of fact and where there exists only one conclusion." *Johnson,* 931 F.2d at 1244; *see also Webb v. St. Louis Post–Dispatch,* 51 F.3d 147, 148 (8th Cir.1995) (quoting *Johnson,* 931 F.2d at 1244); *Crawford,* 37 F.3d at 1341 (quoting *Johnson,* 931 F.2d at 1244). To put it another way, "[b]ecause discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant." *Crawford,* 37 F.3d at 1341 (holding that there was a genuine issue of material fact precluding summary judgment). *Accord Snow,* 128 F.3d at 1202 ("Because discrimination cases often turn on inferences rather than on direct evidence, we are particularly deferential to the nonmovant," citing *Crawford* ); *Webb v. Garelick Mfg. Co.,* 94 F.3d 484, 486 (8th Cir.1996) (citing *Crawford,* 37 F.3d at 1341); *Wooten v. Farmland Foods,* 58 F.3d 382, 385 (8th Cir. 1995) (quoting *Crawford,* 37 F.3d at 1341); *Johnson,* 931 F.2d at 1244.

However, the Eighth Circuit Court of Appeals has also observed that, "[a]lthough summary judgment should be used sparingly in the context of employment discrimination cases, *Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir.1994), the plaintiff's evidence must go beyond the establishment of a prima facie case to support a reasonable inference regarding the alleged illicit reason for the defendant's action." *Landon v. Northwest Airlines, Inc.,* 72 F.3d 620, 624 (8th Cir.1995) (citing *Reich v. Hoy Shoe Co.,* 32 F.3d 361, 365 (8th Cir.1994)). Furthermore, "[s]ummary judgment is proper when a plaintiff fails to establish a factual dispute on an essential element of her [or his] claim." *Snow,* 128 F.3d at 1202. *Accord Helfter,* 115 F.3d at 615; *Bialas v. Greyhound Lines, Inc.,* 59 F.3d 759, 762 (8th Cir.1995).

The court finds these cautions no less applicable to summary judgment in cases alleging retaliatory discharge, because such cases also most often depend upon inferences rather than direct evidence concerning an employer's motivation. This can be

seen from the Iowa Supreme Court's application of a burden-shifting analysis to retaliatory discharge claims: The plaintiff must first establish a *prima facie* case of retaliatory discharge by showing protected activity, adverse employment action, and a causal connection between the two; the burden then shifts to the employer to state a legitimate reason for its action; finally, the plaintiff must demonstrate that the employer's reason is pretextual. *See, e.g., City of Hampton v. Iowa Civil Rights Comm'n*, 554 N.W.2d 532, 536 (Iowa 1996); *Yockey v. State*, 540 N.W.2d 418, 422 (Iowa 1995); *Hulme v. Barrett*, 449 N.W.2d 629, 633 (Iowa 1989) (*Hulme I*). Therefore, with these standards in mind, the court turns to consideration of Sioux By–Products' motion for summary judgment on both Hansen's ADA and retaliatory discharge claims.

### B. The ADA Claim

#### 1. Hansen's concession

Sioux By–Products' first ground for summary judgment is that Hansen cannot generate a genuine issue of material fact that he is a qualified individual with a disability within the meaning of the ADA, and thus Sioux By–Products is entitled to summary judgment on Count I of Hansen's complaint. In his response to Sioux By–Products' summary judgment motion, Hansen concedes that his ADA claim must be dismissed. Specifically, Hansen states,

> 2. In this Resistance, Plaintiff acknowledges he has failed to raise a genuine issue of material fact as to whether he was a "qualified individual with a disability," as defined by the ADA, on the date of his discharge from his employment. Information obtained in the discovery phase of this lawsuit has convinced Plaintiff and his counsel that under these circumstances Defendant's termination of Plaintiff for re-

porting a work injury does not necessarily trigger application of the ADA.

Plaintiff's Resistance To Defendant's Motion For Summary Judgment, p. 1. Furthermore, in the prayer in his resistance, Hansen "respectfully requests the Court overrule Defendant's Motion for Summary Judgment insofar as it relates to Plaintiff's *retaliation* claim, and then remand this action to the state court as the Court deems appropriate." *Id.* at 2 (emphasis added).

Because Hansen concedes that he cannot generate a genuine issue of material fact on an essential element of his ADA claim, Sioux By–Products is entitled to summary judgment on Count I of Hansen's complaint. FED.R.CIV.P. 56(c); *Snow*, 128 F.3d at 1202 ("Summary judgment [in an employment-discrimination case] is proper when a plaintiff fails to establish a factual dispute on an essential element of her [or his] claim."); *Helfter*, 115 F.3d at 615 (same); *Bialas*, 59 F.3d at 762 (same). Furthermore, summary judgment in Sioux By–Products' favor on the ADA claim means that the federal question upon which the court's removal jurisdiction was based is now lacking. These circumstances do not, however, require the court to remand this action to state court, where it originated, as Hansen seems to suggest in his response to Sioux By–Products' motion for summary judgment.[4]

#### 2. Hansen's request for remand

##### a. The applicable statute

■ Section 1447(c) of title 28 of the United States Code provides that, where an action has been removed, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Hansen's request for remand of his state-law claim seems to be based on the

---

**4.** Indeed, Hansen has not pressed the point, because nowhere in his brief in support of his resistance to Sioux By–Products' motion for summary judgment has he argued for, or cited any authority requiring, remand of this case to state court. Nonetheless, because the court's subject matter jurisdiction may be in question, the court will consider whether or not it should—or indeed is required—to remand this action after granting summary judgment to the

defendants on the only federal claim Hansen has asserted. *See Pioneer Hi–Bred Int'l v. Holden Found. Seeds, Inc.*, 35 F.3d 1226, 1242 (8th Cir. 1994) (because of their limited jurisdiction, federal courts have a duty to examine the substantiality of the federal claim throughout the litigation, and must dismiss all claims if the federal claim proves patently meritless even after the trial begins); *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir.1987) (same).

belief that, without his ADA claim, this court lacks subject matter jurisdiction upon which to base removal jurisdiction.

However, the Eighth Circuit Court of Appeals has twice given at least tacit approval to the proposition that, where the court has dismissed or otherwise disposed of the federal claim or claims upon which removal was premised, the statute governing the court's jurisdiction over remaining state-law claims is 28 U.S.C. § 1367(c) rather than 28 U.S.C. § 1447(c), and, as a consequence, the court has discretion either to retain jurisdiction or to remand remaining state-law claims to state court. *See Gaming Corp. of Am. v. Dorsey & Whitney*, 88 F.3d 536, 541–42 (8th Cir.1996) ("The district court explicitly remanded [an action removed pursuant to 28 U.S.C. § 1441] under 28 U.S.C. § 1367(c)(3) after concluding no federal claims remained and declining to exercise supplemental jurisdiction.... Because the district court never lacked subject matter jurisdiction and remanded under § 1367, neither § 1447(d) nor any other statutory bar exists to our jurisdiction [to hear an appeal of the remand order]"; citations omitted); *In re Prairie Island Dakota Sioux*, 21 F.3d 302, 304 (8th Cir.1994) (per curiam) ("Pursuant to 28 U.S.C. § 1441, defendants removed the action to federal court. Realizing that an Indian tribe may not be sued under Title VII, plaintiffs moved to amend their complaint to delete the federal law claims.... After granting the motion to amend the complaint, the district court found that it no longer had federal question jurisdiction. The court elected not to exercise its supplemental jurisdiction, and remanded the case based on 28 U.S.C. § 1367(c) and *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)."). These cases strongly suggest that, because this court does not lack federal question jurisdiction over Hansen's ADA claim—it has simply found that Hansen cannot prove an essential element of that claim and will grant summary judgment to Sioux By–Products accordingly—the statute applicable to Hansen's request for remand is 28 U.S.C. § 1367(c), not 28 U.S.C. § 1447(c). Under § 1367(c), the court must decide whether, in the exercise of its discretion, it should retain supplemental jurisdiction over Hansen's retaliatory discharge claim, or in-

stead remand it to state court. *See* 28 U.S.C. § 1367(c).

What the Eighth Circuit Court of Appeals decisions cited above suggest, the Fifth Circuit Court of Appeals has explicitly held. In *Doddy v. Oxy USA, Inc.*, 101 F.3d 448 (5th Cir.1996), the Fifth Circuit Court of Appeals held that § 1447(c) is no bar to the exercise of the court's discretion under § 1367(c) to retain or remand state-law claims after dismissal of the federal claims upon which removal jurisdiction was based. In *Doddy*, one of the defendants, Western, removed an action involving state-law tort claims to federal court pursuant to 28 U.S.C. § 1452(a). *Doddy*, 101 F.3d at 454. Like § 1441, § 1452 provides for removal of certain actions filed in state court: In the case of § 1452, the removable actions are bankruptcy-related ones over which the federal court would have had jurisdiction pursuant to 28 U.S.C. § 1334. *See* 28 U.S.C. § 1452; 28 U.S.C. § 1334. Western asserted that removal pursuant to § 1452 was proper, because it was in bankruptcy proceedings at the time, and Western maintained that the Doddys' action was related to those bankruptcy proceedings. *Doddy*, 101 F.3d at 454. The district court later granted Western's motion for summary judgment on the bankruptcy-related claims, but declined to remand the remaining state-law tort claims to state court. *Id.* at 455.

On appeal, the Doddys argued that the dismissal of Western from the case divested the court of subject matter jurisdiction, and thus the court was required to remand the action to state court. *Id.* The Fifth Circuit Court of Appeals disagreed. The court noted first that "where ... the district court declines to remand a case that was bankruptcy-related when removed but has since ceased being bankruptcy-related[,] the court's remand authority switches from that under § 1452 to that under § 1367." *Id.* at 455 n. 3 (citing also *Carnegie–Mellon*, 484 U.S. at 354 n. 11, 108 S.Ct. at 621 n. 11, which states that "the remand authority conferred by the removal statute and the remand authority conferred by the doctrine of pendent jurisdiction overlap not at all"). The court concluded that, although the district court had dismissed the federal claims upon

which the court's removal jurisdiction depended, "the district court had discretion to retain supplemental jurisdiction over the Doddy's tort claims or to remand them." *Id.* (citing 28 U.S.C. § 1367).

The Fifth Circuit Court of Appeals explained its holding as follows:

> We determine that the district court had discretion whether to retain jurisdiction over the Doddys' pendent state claims, and review its decision not to remand for abuse of discretion. *Rosado v. Wyman,* 397 U.S. 397, 401, 90 S.Ct. 1207, 1212, 25 L.Ed.2d 442 (1970).
>
> The Doddys' contention that the district court automatically lost subject matter jurisdiction over the case when the bankruptcy-related claims dropped out before trial is in error. *See Freeport–McMoRan, Inc. v. KN Energy, Inc.,* 498 U.S. 426, 428, 111 S.Ct. 858, 860, 112 L.Ed.2d 951 (1991) (noting that "[w]e have consistently held that if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events"). The court had discretion whether to keep the Doddys' claims. It was certainly not *required* to remand under 28 U.S.C. § 1447(c). *See Carnegie–Mellon,* 484 U.S. at 350 n. 7, 108 S.Ct. at 619 n. 7 (noting that in the "usual case," the court will dismiss pendent claims at the same time it dismisses federal ones, but that this is not a "mandatory rule to be applied inflexibly in all cases"); *Newport Limited v. Sears, Roebuck and Co.,* 941 F.2d 302, 307 (5th Cir.1991) (ruling that, while it is appropriate in many instances for a court to dismiss pendent state claims at the same time it dismisses federal claims, such dismissal is neither "absolute nor automatic"), *cert. denied,* 502 U.S. 1096, 112 S.Ct. 1175, 117 L.Ed.2d 420 (1992).
>
> The Supreme Court has instructed that, when dealing with motions to remand pendant claims, courts should exercise their discretion in a way that best serves the principles of economy, convenience, fairness, and comity. *Carnegie–Mellon,* 484 U.S. at 357, 108 S.Ct. at 623. It has noted, for example, that when a federal-law claim is "eliminated at an early stage of the litigation, the District Court ha[s] a powerful reason to choose not to continue to exercise jurisdiction." *Id.* at 351, 108 S.Ct. at 619. However, no single factor is dispositive. *Parker & Parsley Petroleum Co. v. Dresser Industries,* 972 F.2d 580, 587 (5th Cir.1992).

*Doddy,* 101 F.3d at 455–56 (emphasis in the original).

This court sees no reason why the situation should be any different when the initial removal is pursuant to 28 U.S.C. § 1441, on the basis of a federal question, rather that 28 U.S.C. § 1452. Both statutes provide for removal jurisdiction over actions involving particular federal claims, and both provide for removal with the federal claim of any supplemental state-law claims. *Compare* 28 U.S.C. § 1452 (providing for removal of claims or actions involving bankruptcy-related claims) *with* 28 U.S.C. § 1441(c) (providing for removal of otherwise non-removable claims joined with removable ones). Thus, in light of *Gaming Corporation, In re Prairie Island Dakota Sioux,* and *Doddy,* this court concludes that it is not required to remand this action pursuant to 28 U.S.C. § 1447(c) upon the failure of Hansen's federal claim, but instead has the discretion, pursuant to 28 U.S.C. § 1367(c), to retain supplemental jurisdiction over Hansen's remaining state-law claim or to remand that claim to state court.

### b. Application of the statute

■ Section 1367(c) provides that a federal district court "may decline to exercise supplemental jurisdiction" if

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). This subsection gives a court the discretion to reject jurisdiction over supplemental claims, "but only to a point." *McLaurin v. Prater,* 30 F.3d 982, 985 (8th Cir.1994). "The statute plainly allows the

district court to reject jurisdiction over supplemental claims only in the four instances described therein." *Id.* Thus, where the case clearly fits within one of the subsections listed above, the court may decline to exercise supplemental jurisdiction. *Packett v. Stenberg,* 969 F.2d 721, 726–27 (8th Cir.1992). The case here clearly fits within the third category, because it is a case in which "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

■ Even though remand is permissible pursuant to § 1367(c)(3), it has long been the law of this circuit, guided by the Supreme Court, that the decision whether to exercise supplemental jurisdiction over state-law claims when federal claims have been dismissed depends upon "factors such as convenience, fairness, and comity." *See Pioneer Hi–Bred Int'l v. Holden Found. Seeds, Inc.,* 35 F.3d 1226, 1242 (8th Cir.1994) (citing *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966)); *Murray v. Wal–Mart, Inc.,* 874 F.2d 555 (8th Cir.1989) (citing *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988), and *North Dakota v. Merchants Nat'l Bank & Trust Co.,* 634 F.2d 368, 371 (8th Cir.1980) (*en banc* )). Other circuit courts of appeals agree. *See, e.g., Doddy,* 101 F.3d at 456 (also counseling that the decision whether to retain or remand state claims pursuant to § 1367(c)(3) should be made applying principles of economy, convenience, fairness, and comity); *Allen v. City of Los Angeles,* 92 F.3d 842, 846 (9th Cir.1996) (counseling that, once one of the grounds listed in § 1367(c) is present, "the court should consider whether the exercise of jurisdiction advances 'the values of economy, convenience, fairness, and comity,'" quoting *Executive Software v. U.S. Dist. Court,* 24 F.3d 1545, 1557 (9th Cir.1994)), *overruled in part, Acri v. Varian Assocs., Inc.,* 114 F.3d 999 (9th Cir.1997) (*en banc* ).[5] Furthermore, "[i]t is the law of this circuit that 'the substantial investment of judicial time and resources in the case . . . justifies the exercise of jurisdiction over the state claim, even after

the federal claim has been dismissed.'" *Pioneer Hi–Bred Int'l v. Holden Foundation Seeds, Inc.,* 35 F.3d 1226, 1242 (8th Cir.1994) (quoting *North Dakota v. Merchants Nat'l Bank & Trust Co.,* 634 F.2d 368, 371 (8th Cir.1980) (*en banc* ), and also citing *Gilbert/Robinson, Inc. v. Carrie Beverage–Missouri, Inc.,* 989 F.2d 985, 993 (8th Cir.), *cert. denied,* 510 U.S. 928, 114 S.Ct. 338, 126 L.Ed.2d 282 (1993), and *First Nat'l Bank & Trust Co. v. Hollingsworth,* 931 F.2d 1295, 1307–08 (8th Cir.1991)). *Accord Murray,* 874 F.2d at 558 (also stating that retention of jurisdiction is proper in such circumstances).

Guided by these considerations, the court has no hesitation here in retaining supplemental jurisdiction over Hansen's remaining state-law claim. This court has already invested sufficient resources in pre-trial administration to make retention of jurisdiction appropriate. *Pioneer Hi–Bred Int'l,* 35 F.3d at 1242; *Murray,* 874 F.2d at 558. Furthermore, this matter is set for trial in this court in just over three months. The shortness of time before trial scheduled in this court and the uncertainties of the availability of a comparable trial date in state court mean that there are no "factors such as convenience, fairness, and comity" suggesting that remand should be preferred. *Id.; Murray,* 874 F.2d at 558. Thus, the court will deny Hansen's request for remand of his state-law claim upon the grant of summary judgment in favor of Sioux By–Products on his federal claim.

### C. Retaliatory Discharge

Sioux By–Products has also moved for summary judgment on Hansen's retaliatory discharge claim in Count II of his complaint, which Hansen has hotly contested. Sioux By–Products argues that, as a matter of law and logic, and as a matter of fact, this claim must fail. First, Sioux By–Products points out that Hansen had not yet filed a claim for workers' compensation benefits—which Sioux By–Products argues is a legal prerequisite to such a retaliatory discharge claim—when he was discharged. Also, because he had not

---

**5.** In *Acri,* the *en banc* court overruled "suggestions" in *Allen* that either the district or appellate courts have an obligation, *sua sponte,* to ensure that the discretionary retention of supplemental jurisdiction under 28 U.S.C. § 1367(c) is prudent where no one has objected and supplemental jurisdiction was proper under § 1367(a). *Acri,* 114 F.3d at 1000.

yet filed a claim, as a matter of logic, Hansen could not have been fired in retaliation for filing such a claim. Sioux By–Products also contends that Hansen cannot generate a genuine issue of material fact that there is any causal connection between Hansen's seeking or needing workers' compensation benefits and his termination. Rather, Sioux By–Products argues that the undisputed evidence is that Hansen was fired for poor work performance during his probationary period.

Hansen counters that Sioux By–Products' first argument is based on a "crabbed" reading of Iowa law. He contends that Iowa public policy is offended if an employer's retaliatory discharge interferes in any way with an employee's efforts to seek or obtain workers' compensation benefits, whether or not the employee has actually filed a claim for such benefits. As to Sioux By–Products' argument concerning the lack of any causal connection between Hansen's seeking workers' compensation benefits and his discharge, Hansen contends that he has generated substantial genuine issues of material fact from record evidence.

### 1. Lack of any "filing" for workers' compensation benefits

Under Iowa law, a wrongful or retaliatory discharge in violation of public policy is an intentional wrong committed by the employer against an employee who chooses to exercise some substantial right. *See, e.g., Niblo v. Parr Mfg., Inc.*, 445 N.W.2d 351, 355 (Iowa 1989) (citing *Perks v. Firestone Tire & Rubber Co.*, 611 F.2d 1363, 1366 (3d Cir. 1979)). The remedy for the tort should be for the employee's complete injury, including out-of-pocket loss of income and causally connected emotional harm. *Id.*

Under Iowa law, there are certainly public policy limitations on the discharge of an at-will employee in retaliation for *filing* a workers' compensation claim. *See Yockey v. State*, 540 N.W.2d 418 (Iowa 1995). But the protection of the Iowa public policy embodied in its workers' compensation scheme is broader than that. As the Iowa Supreme Court has explained, "[W]e have found an implied prohibition against retaliatory discharge based on an employee's exercise of a right conferred by a clearly articulated legislative enactment." *Borschel v. City of Perry*,

512 N.W.2d 565, 568 (Iowa 1994). The Iowa Supreme Court then cited as examples of decisions authorizing causes of action pursuant to Iowa's public policy concerning workers' compensation its decisions in *Niblo v. Parr Mfg., Inc.*, 445 N.W.2d 351 (Iowa 1989), and *Springer v. Weeks & Leo Co.*, 429 N.W.2d 558 (Iowa 1988). *Borschel*, 512 N.W.2d at 568. In *Niblo*, the court recognized a retaliatory discharge claim by an employee discharged because she had *threatened* to file a workers' compensation claim. *Niblo*, 445 N.W.2d at 353. In *Springer*, the court recognized that a cause of action exists when an employee's discharge *serves to frustrate the public policy* expressed in the workers' compensation statute. *Springer*, 429 N.W.2d at 560. Neither of these cases required the *filing* of a workers' compensation claim to trigger public policy protections. To the contrary, *Niblo* clearly stands for the proposition that it is *not* necessary under Iowa law that the plaintiff ever actually *file* a workers' compensation claim, if the employee's termination interferes with the employee's right to file such a claim. *Niblo*, 445 N.W.2d at 353. Indeed, relying on *Niblo*, this court so held in *Reedy v. White Consol. Indus., Inc.*, 890 F.Supp. 1417, 1433 (N.D.Iowa 1995).

In *Niblo*, the Iowa Supreme Court held that a jury could deduce that the plaintiff was fired for merely wanting to or threatening to file a workers' compensation claim where the representative of the company told the employee that he was not going to pay workers' compensation benefits for a skin condition that was allegedly work-related, that he did not believe that the employee's skin problem was his fault or "factory related," and that he was not going to pay to have the employee's face worked on at all, and, at the conclusion of this outburst, the representative fired the employee. *Niblo*, 445 N.W.2d at 353. In *Reedy*, this court held that where the plaintiff had presented evidence that he was fired when he first indicated a need or desire for workers' compensation benefits, the employer was not entitled to summary judgment on a retaliatory discharge claim. *Reedy*, 890 F.Supp. at 1434. Similarly, as Hansen points out, the Iowa Supreme Court has held that public policy is

violated when an employee is intimidated into foregoing workers' compensation benefits by a retaliatory discharge, even if the employer does not interfere with actual receipt of workers compensation benefits. *See Smith v. Smithway Xpress, Inc.*, 464 N.W.2d 682, 685–86 (Iowa 1990).

Here, it is undisputed that Hansen was notified of his termination the same day he was injured, perhaps within moments of notifying his employer that he had suffered a work-related injury. Thus, the interference alleged occurred after Hansen was injured on the job but before he ever had an opportunity to file a workers' compensation claim. This is essentially the same factual predicate, supported by adequate evidence, that was sufficient to sustain the jury's verdict in *Niblo* and that required denial of the employer's motion for summary judgment in *Reedy*. Indeed, if Sioux By–Products' reading of Iowa law were accepted, an employer could escape from liability on a retaliatory discharge claim based on interference with workers' compensation benefits simply by firing any employee the moment he or she was injured on the job, thus effectively preempting the employee's opportunity to file for workers' compensation benefits, and thereby precluding the employee from any judicial redress for the interference with "the employee's exercise of a right conferred by a clearly articulated legislative enactment," *Borschel*, 512 N.W.2d at 568, in this case, the legislative scheme for workers' compensation embodied in Chapter 85 of the Iowa Code. This court does not believe that the protection of Iowa's tort of wrongful discharge in violation of public policy is so constrained.

Therefore, Sioux By–Products is not entitled to summary judgment as a matter of law, just because Hansen never actually *filed* a workers' compensation claim, at least if *Niblo* and *Reedy* properly state Iowa law. *See* FED.R.CIV.P. 56(c) (summary judgment may only be granted where there are no genuine issues of material fact and "the moving party is entitled to judgment as a matter of law."). Sioux By–Products has presented no authority requiring this court to retreat from its holding in *Reedy*.

Sioux By–Products' citation of *Sanford v. Meadow Gold Dairies, Inc.*, 534 N.W.2d 410, 412 (Iowa 1995), does not require a different result. In *Sanford*, the court did indeed state that "[a]n essential element of [a retaliatory discharge] claim is a showing concerning the employer's specific motivation in firing; it must appear that the discharge was prompted by the *filing* of the workers' compensation claim." *Sanford*, 534 N.W.2d at 412 (emphasis added). However, Sioux By–Products has taken this statement out of context. In this court's view, the first part of this statement states the general rule: The essential element of such a claim is a showing concerning the employer's specific motivation in the employee's termination. This statement has much currency in Iowa law. *See, e.g., City of Hampton*, 554 N.W.2d at 535 (stating one element of a *prima facie* case of retaliation to be evidence of a causal connection showing an employee's protected activity was a significant factor in the employer's motivation for adverse employment action and employing a burden-shifting analysis to circumstantial evidence to determine the employer's motivation, citing *Hulme I*, 449 N.W.2d at 633); *Yockey*, 540 N.W.2d at 422 (also citing *Hulme I*); *Hulme II*, 480 N.W.2d at 42 (same); *Hulme I*, 449 N.W.2d at 633 (same); *Reiss*, 548 N.W.2d at 173 (same). The second part, upon which Sioux By–Products appears to rely, is fact-specific to cases such as *Sanford* in which the employee was not fired until quite some time *after* he or she had actually filed workers' compensation claims. *See Sanford*, 534 N.W.2d at 411 (the employee was not fired until months after he filed for workers' compensation benefits—and indeed, not until after the company suspected him of malingering while receiving such benefits). However, the statement in *Sanford* stating that the employee was required to prove "that the discharge was prompted by the *filing* of a workers' compensation claim," *id.* at 412 (emphasis added), says nothing whatever about whether a retaliatory discharge claim can be proved in very different circumstances, such as where the employee was fired immediately after he was injured and before he could do more than seek medical attention for a work-related injury. Those circumstances are more nearly addressed in *Niblo* and *Reedy*, and thus, the court finds those two decisions, not *Sanford*, state the specific requirement

Hansen must show in his circumstances. In short, the essential question, in every case, is the employer's retaliatory motivation—whether the employer intended to interfere with the employee's workers' compensation rights—not whether the allegedly retaliatory action is taken before or after the employee actually files a claim for workers' compensation benefits.

Next, although Sioux By–Products contends that Hansen's claim that he was fired in retaliation for "filing" a workers' compensation claim before he actually "filed" a claim "simply defies logic," *see* Defendant's Brief In Support Of Its Motion For Summary Judgment, p. 10, Sioux By–Products' misstates Hansen's claim as pleaded. The complaint actually—and quite properly under *Niblo* and *Reedy,* for example—states Hansen's claim as "Defendant terminated the employment of Plaintiff in retaliation for his sustaining his work injury and for seeking medical care for this injury" and the termination was "in retaliation for his reporting his work injury and seeking medical care through Defendant's worker's compensation coverage." Complaint, Division II, ¶¶, 3–4. Nothing about the claim as pleaded "defies logic," because Hansen does not allege retaliation for something that had not yet happened. Instead, he alleges retaliation of a kind that would offend Iowa public policy: discharge for reporting an injury and seeking medical attention for an injury that would be covered by workers' compensation. *See Niblo,* 445 N.W.2d at 353; *Reedy,* 890 F.Supp. at 1434.

■ Nor is Sioux By–Products entitled to summary judgment on the ground that Hansen acknowledges in his deposition that he was told by Johnson, his supervisor, that Sioux By–Products would pay for his medical bills from his injury on October 26, 1995. First, the extent to which Sioux By–Products has paid covered medical bills is in dispute, and, even if some benefits were paid, terminating an employee in retaliation for seeking or needing such benefits is no less offensive to public policy, because of the chilling effect such a firing would have:

> As we pointed out in *Springer,* 429 N.W.2d at 561, retaliatory discharge relieves the employer of his responsibility by intimidating employees into foregoing the benefits to which they are entitled in order to keep

their jobs. This intimidation occurs even if retaliation is not the predominant purpose for the firing. If the retaliation is allowed to weigh at all in the employer's decision to discharge, there will be a chilling effect on employees entitled to claim benefits. This would clearly conflict with the public policy expressed in [Iowa Code § ] 85.18 [ (Iowa's workers' compensation statute) ].

*Smith,* 464 N.W.2d at 686. In *Smith,* the Iowa Supreme Court held that an employer may be liable for wrongful termination even if the employer does not interfere with actual receipt of workers' compensation benefits. *Id.* at 685 ("We agree ... that retaliatory discharge violates public policy even if the employer does not interfere with the discharged employee's benefits.").

■ The court concludes that Sioux By–Products is not entitled to summary judgment on Hansen's retaliatory discharge claim simply because he was fired before he filed a workers compensation claim or because Hansen concedes that he was promised the company would pay benefits. As a matter of law, actual filing of a workers' compensation claim before termination is not required to trigger the claim. *See Niblo,* 445 N.W.2d at 355. *Accord Reedy,* 890 F.Supp. at 1434. Such a claim may be based on interference with workers' compensation claims, such as by terminating an employee when the employee reports or seeks treatment for a work-related injury or when it is apparent that the employee wants or needs workers' compensation coverage for a work-related injury.

### 2. *Lack of a causal connection*

■ Sioux By–Products next contends that Hansen cannot generate a genuine issue of material fact that there was a causal connection between his firing and his need for workers' compensation benefits or his reporting an injury for which workers' compensation benefits might be payable. Sioux By–Products argues, to the contrary, that the record reveals beyond dispute that Hansen was fired for poor performance and that notice of his termination had to be given on the date of his injury only by coincidence, because Hansen was at the end of his probationary period. However, the court finds

that Hansen has generated genuine issues of material fact on the causal connection between his termination and his need for workers' compensation benefits. *See* FED.R.CIV.P. 56(c) (summary judgment may only be granted where the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.").

As the court has noted, Sioux By–Products is correct that a causal connection between protected activity by the plaintiff and allegedly retaliatory adverse employment action by the defendant is an essential element of a retaliatory discharge claim under Iowa law. *See, e.g., City of Hampton,* 554 N.W.2d at 535 (stating one element of a *prima facie* case of retaliation to be evidence of a causal connection showing an employee's protected activity was a significant factor in the employer's motivation for adverse employment action, citing *Hulme I,* 449 N.W.2d at 633); *Yockey,* 540 N.W.2d at 422 (also citing *Hulme I* ); *Hulme II,* 480 N.W.2d at 42 (same); *Hulme I,* 449 N.W.2d at 633 (same); *Reiss,* 548 N.W.2d at 173 (same). Sioux By–Products is also correct that the causation standard to prove retaliation is a high one: The "causal connection" must be a "significant factor" motivating the adverse employment decision. *City of Hampton,* 554 N.W.2d at 535; *Hulme 11,* 480 N.W.2d at 42.

However, at the summary judgment stage of the proceedings, the question is whether the record generates a reasonable inference in favor of the plaintiff on this element. *See Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. at 1356 (a court considering a motion for summary judgment must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts); *Quick,* 90 F.3d at 1377 (same). The record now before the court generates such reasonable inferences, for a number of reasons.

First, in various contexts, the Eighth Circuit Court of Appeals has held that the causal connection between allegedly retaliatory action by the employer and protected activity by the employee can be established by proof that the discharge followed the protected activity so closely in time as to justify an inference of retaliatory motive. *Carroll v.*

*U.S. Dep't of Labor,* 78 F.3d 352, 356 (8th Cir.1996) (stating this rule in a case involving retaliation under the Energy Reorganization Act (ERA)); *Kinkead v. Southwestern Bell Tel. Co.,* 49 F.3d 454, 456 (8th Cir.1995) (stating this rule in an ERISA retaliation case); *Schweiss v. Chrysler Motors Corp.,* 987 F.2d 548, 549 (8th Cir.1993) (stating this rule in a case in which a discharge followed a report to OSHA by only four days); *Rath v. Selection Research, Inc.,* 978 F.2d 1087, 1090 (8th Cir.1992) (stating this rule, but expressing doubt that a discharge six months after alleged whistle-blowing met the causal connection requirement); *Couty v. Dole,* 886 F.2d 147, 148 (8th Cir.1989) (a discharge thirty days after protected activity involved sufficient temporal proximity to establish the necessary causal connection); *Keys v. Lutheran Family & Children's Servs. of Mo.,* 668 F.2d 356, 358 (8th Cir.1981) (a discharge less than two months after protected activity had sufficient proximity to establish the necessary causal connection). Although the Iowa Supreme Court has stated that "[t]he mere fact that an adverse employment decision occurs after [protected activity] is not, standing alone, sufficient to support a finding that the adverse employment decision was in retaliation to the discrimination claim," *Hulme II,* 480 N.W.2d at 43, the inference arising from such temporal proximity may be sufficient to preclude summary judgment, however hotly the issue may be contested at trial, particularly where temporal proximity is coupled with other evidence giving rise to an inference of illegal motive. *See Walters v. U.S. Gypsum Co.,* 537 N.W.2d 708, 712 (Iowa 1995) (holding that the trial court erred in granting summary judgment on a retaliatory discharge claim, because, although the issue would "no doubt be hotly disputed during a full trial," there was a genuine issue of material fact as to causal connection where the employee's termination followed on the heels of her discrimination complaint and she had never been disciplined for any of the reasons the employer gave for firing her). Consequently, Hansen's termination the same day as he engaged in protected activity—reporting a work-related injury and seeking medical treatment under his employer's workers' compensation coverage—raises inferences

that may be sufficient to defeat a summary judgment motion by the employer.

But there is more, Hansen has generated genuine issues of material fact that Sioux By–Products' "business judgment" reason for terminating Hansen—his allegedly poor performance and the imminent end of his probationary period—are suspect.[6] For example, Hansen has presented evidence that, contrary to Sioux By–Products' assertion, his probationary period was not about to end, and thus a termination decision did not have to be made the day before his injury and notice of that decision did not have to be given, merely by coincidence, on the date of his injury. Article XII of the employment contract between Sioux By–Products and UFCW Local 1142 provides that the probationary period for an employee runs for the employee's first thirty *working* days within the sixty days following his or her initial employment. Plaintiff's Exhibit 1 In Resistance To Defendant's Motion For Summary Judgment. It is undisputed that, although Hansen applied for a position on September 25, 1995, he was hired effective October 2, 1995. Although his termination was thirty *calendar* days after he *applied* for employment, it certainly was not thirty *working* days after his initial employment. Whether Sioux By–Products miscalculated Hansen's probationary period or is raising the supposed imminent end of his probationary period as a pretext for wrongful conduct is a matter for a jury to decide.

Second, there is no evidence in the record that Hansen had received any prior notice that his work performance was inadequate. Although Hansen has not presented the court with any evidence that such notice was *required* during his probationary period, such a notice was nonetheless the ordinary practice of Sioux By–Products, according to a union representative's affidavit. In his affidavit, Ronald L. Derochie, who has been president of UFCW Local 1142 since 1982, states that he is not aware of any cases prior

to Hansen's in which Sioux By–Products terminated an employee for poor work performance without any advance notice or counseling. Plaintiff's Exhibit 10 In Resistance To Motion For Summary Judgment. The obvious inference is that poor work performance is an after-the-fact justification, with little or no prior evidence in Hansen's employment record, for a retaliatory discharge motivated by something other than Hansen's job performance. *Compare Walters*, 537 N.W.2d at 712 (the district court erred in granting summary judgment on a retaliatory discharge claim based on lack of evidence of a causal connection where the termination followed closely after the employee filed a civil rights claim and she had never been disciplined for any of the reasons the employer gave for firing her).

Both of these disputed facts have real bases in the record, *see Hartnagel*, 953 F.2d at 394 (an issue of material fact is genuine if it has a real basis in the record), and both are material under the governing law, *see Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510 (a factual dispute is "material," and will therefore preclude summary judgment, if it "might affect the outcome of the suit under the governing law"); *Beyerbach*, 49 F.3d at 1326 (same); *Hartnagel*, 953 F.2d at 394 (same), in that each goes directly to the employer's motivation for the allegedly wrongful conduct. *See City of Hampton*, 554 N.W.2d at 535 (a causal connection, showing that protected activity was a significant factor in the employer's motivation, is one element of a *prima facie* case of retaliation); *Yockey*, 540 N.W.2d at 422 (same); *Hulme II*, 480 N.W.2d at 42 (same); *Hulme 1*, 449 N.W.2d at 633 (same); *Reiss*, 548 N.W.2d at 173 (same). Even under *Sanford*, upon which Sioux By–Products relies, the employer's motivation is an essential element of a retaliatory discharge claim. *See Sanford*, 534 N.W.2d at 412 ("An essential element of [a retaliatory discharge] claim is a showing

---

**6.** As the court noted above, the Iowa Supreme Court applies a burden-shifting analysis to retaliatory discharge claims: The plaintiff must first establish a *prima facie* case of retaliatory discharge by showing protected activity, adverse employment action, and a causal connection between the two; the burden then shifts to the employer to state a legitimate reason for its ac-

tion; and the plaintiff must then demonstrate the employer's reason is pretextual. *See, e.g., City of Hampton*, 554 N.W.2d at 536; *Yockey*, 540 N.W.2d at 422; *Hulme I*, 449 N.W.2d at 633. Hence, inferences regarding the credibility of the employer's proffered legitimate reason for its action are particularly pertinent.

concerning the employer's specific motivation in firing [the employee].").

Furthermore, keeping in mind the caution with which the Eighth Circuit Court of Appeals has directed district courts to view summary judgment in other kinds of employment cases, because such cases depend upon inferences concerning the employer's motivation, it cannot be said that the record would "not support any reasonable inference for the nonmovant." *Crawford,* 37 F.3d at 1341 (holding that there was a genuine issue of material fact precluding summary judgment). *Accord Snow,* 128 F.3d at 1202 ("Because discrimination cases often turn on inferences rather than on direct evidence, we are particularly deferential to the nonmovant," citing *Crawford); Webb,* 94 F.3d at 486 (citing *Crawford,* 37 F.3d at 1341); *Wooten,* 58 F.3d at 385 (quoting *Crawford,* 37 F.3d at 1341); *Johnson,* 931 F.2d at 1244. Again, this court finds such caution is appropriate in retaliatory discharge cases, because the employer's motivation is also critical and proof of that motivation usually depends upon inferences derived from the circumstances, not upon direct evidence. *See, e.g., City of Hampton,* 554 N.W.2d at 536 (applying a burden-shifting analysis in retaliatory discharge cases to determine the inferences from circumstantial evidence); *Yockey,* 540 N.W.2d at 422 (same); *Hulme I,* 449 N.W.2d at 633 (same). Based on the present record, there are genuine issues of material fact concerning the causal connection between Hansen's protected conduct and his allegedly retaliatory discharge that preclude summary judgment on Count II of Hansen's complaint. *Cf. Snow* 128 F.3d at 1202 ("Summary judgment [in an employment case] is proper when a plaintiff fails to establish a factual dispute on an essential element of her [or his] claim."). *Accord Helfter,* 115 F.3d at 615; *Bialas,* 59 F.3d at 762.

### III. CONCLUSION

Hansen concedes that Sioux By–Products is entitled to summary judgment on his ADA claim, because he cannot generate a genuine issue of material fact that he was a qualified individual with a disability within the meaning of the ADA at the time he was fired. Although this resolves the federal claim upon which the court's removal jurisdiction was based, pursuant to the discretion vested in the court to retain jurisdiction over supplemental claims in these circumstances under 28 U.S.C. § 1367(c), Hansen's request to remand this action to state court is denied. As to Count II of the complaint, the court concludes, as a matter of law, that the filing of a workers' compensation claim is not required as an element of a retaliatory discharge claim, as Sioux By–Products had contended. It is sufficient if an employee's termination was intended to interfere with his workers' compensation claim. Hansen has asserted such a claim here. Furthermore, Hansen has generated genuine issues of material fact on that claim concerning a causal connection between his protected activity and his allegedly retaliatory discharge.

Therefore, Sioux By–Products' motion for summary judgment is **granted** as to Count I, and **denied** as to Count II. Hansen's request that the court remand his remaining state-law claim to state court is **denied.**

**IT IS SO ORDERED.**