874 F.2d 555
 Mary MURRAY, Appellee,
v.
WAL-MART, INC.; Earnest Harris, individually and as manager
of Wal-Mart, Inc.; Wayne Huggs, individually known and as
assistant manager of Wal-Mart, Inc.; Dana Elliot,
individually and as agent of Wal-Mart, Inc.; Joe Emmett,
individually and as employee of Wal-Mart, Inc.; Randy
Snipes, individually and as police officer of the City of
Blytheville, Arkansas; Mary Ann Lamp, individually and as
police officer of the City of Blytheville, Arkansas; B.
Morris, individually and as police officer of the City of
Blytheville, Arkansas; Unknown named male jailer of the
City of Blytheville, Arkansas, individually and as officer
of Blytheville, Arkansas; Tosha Bouser of the City of
Blytheville, Arkansas, individually and as officer of
Blytheville, Arkansas; City of Blytheville, Arkansas, Appellants.
 No. 88-2272.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 17, 1989.
Decided May 11, 1989.
 
 Donn Mixon, Jonesboro, Ark., for appellants.
 Samuel Turner, Jr., West Memphis, Ark., for appellee.
 Before FAGG and BEAM, Circuit Judges, and GUNN,* District Judge.
 BEAM, Circuit Judge.
 
 
 1
 Wal-Mart challenges the district court's[1] judgment for the plaintiff, Mary Murray. Murray sued Wal-Mart and the City of Blytheville for malicious prosection, intentional infliction of emotional distress, and violation of 42 U.S.C. Sec. 1983 (1982), after she was detained and prosecuted for shoplifting in a Wal-Mart store. The City agreed to a settlement after completion of the plaintiff's case-in-chief. The suit against Wal-Mart was heard to a conclusion by the district court sitting without a jury. The court awarded Murray compensatory damages, punitive damages, and attorney fees. We affirm.
 
 I. BACKGROUND
 
 2
 Murray, a black female, was shopping at Wal-Mart on June 14, 1986, with her daughter and grandchildren. During her visit to the store, she put one hundred dollars' worth of merchandise on layaway, purchased fifteen dollars' worth of other items, and left the store with $207 in her possession. While shopping, Murray had been observed by Dana Elliot, a Wal-Mart loss prevention employee. Elliot testified at trial that she had seen Murray take a bottle of cologne, valued at $5.87, out of its box and place the bottle inside her halter top.
 
 
 3
 As Murray was leaving the store, Elliot, store manager Earnest Harris, and an assistant store manager detained Murray and inquired about the cologne. Murray denied the accusation of shoplifting and pulled her halter top down to show that she was not concealing any merchandise. Harris directed Murray to accompany him back into the store. Profane and racially derogatory comments were made by Harris at this time.
 
 
 4
 Murray was escorted to the second floor of the store. Harris or Elliot emptied the contents of Murray's purse onto the floor. More derogatory statements were made to Murray while this episode unfolded. The Wal-Mart employees then telephoned the local police and, based upon the advice of a local prosecutor, requested prosecution of Murray for shoplifting. Murray was taken into custody and was searched by a female officer at the station. The search revealed no concealed items. Murray was denied access to her heart medication when she requested it for pain. Following her release, she sought medical attention because of her nervous condition.
 
 
 5
 Wal-Mart has an established shoplifting policy which provides that (1) Wal-Mart employees should treat a suspected shoplifter with courtesy, (2) employees should let suspected shoplifters go when in doubt or when unable to find items on the person, and (3) store managers should check with the regional supervisor before prosecuting doubtful cases.
 
 
 6
 Despite this established policy, and notwithstanding the fact that a thorough search of Murray revealed no concealed merchandise, Wal-Mart continued to pursue Murray's prosecution. Subsequently, Murray was charged with shoplifting but, after trial, was acquitted.
 
 
 7
 In Murray's section 1983 action, the district court based its jurisdiction over Wal-Mart on two grounds. First, the court held that it had federal question jurisdiction over the claims against Wal-Mart because Wal-Mart had acted under color of state law. Therefore, a cognizable section 1983 claim existed against Wal-Mart. Second, the court had allowed the state claims asserted against Wal-Mart to be joined with the federal claims against the City, under the doctrine of pendent jurisdiction. And, the court exercised its discretion to retain jurisdiction over the state claims even after the City had settled and was dismissed.
 
 
 8
 Addressing the merits, the district court found that Wal-Mart had pursued prosecution without probable cause, that the intentional and outrageous conduct of the Wal-Mart employees caused Murray to suffer severe emotional distress, and that the conduct was willful, wanton, and malicious. Consequently, the court awarded Murray $15,000 in actual damages, $10,000 in punitive damages, and $7850 in attorney fees.
 
 II. DISCUSSION
 A. Jurisdiction
 
 9
 We agree with the two grounds for jurisdiction articulated by the district court. Although diversity jurisdiction did not exist in this case, the establishment of a section 1983 claim against Wal-Mart created federal question jurisdiction for the district court, allowing the court to preside over the case even after the City had settled. In addition, even if no cognizable section 1983 action existed, the district court could still retain jurisdiction over the pendent state claims against Wal-Mart.
 
 
 10
 While it is generally recognized that a district court with no jurisdiction over the federal claim asserted by a plaintiff has no jurisdiction over pendent state claims, United Mine Workers v. Gibbs, 383 U.S. 715, 722, 86 S.Ct. 1130, 1136-37, 16 L.Ed.2d 218 (1966); Lubin v. Crittenden Hosp. Ass'n, 713 F.2d 414, 415 (8th Cir.1983), cert. denied, 465 U.S. 1025, 104 S.Ct. 1282, 79 L.Ed.2d 685 (1984), such is not a mandatory jurisdictional rule, Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 108 S.Ct. 614, 619 n. 7, 98 L.Ed.2d 720 (1988). Substantial investment of judicial time and resources, as well as other factors such as convenience, fairness, and comity, may justify the exercise of jurisdiction over the state claims after the federal claim has been dismissed from the suit. Id.; North Dakota v. Merchants Nat'l Bank & Trust Co., 634 F.2d 368, 371 (8th Cir.1980). Here, the district court properly exercised its discretion to retain jurisdiction over pendent state claims against Wal-Mart based on the substantial time expended in federal court and the potential hardship on the plaintiff.
 
 B. Color of State Law
 
 11
 Wal-Mart initially contends that, because Wal-Mart is a private entity, Murray must establish that Wal-Mart acted under color of state law, and she failed to do so. Wal-Mart submits that the complaint failed to allege specific facts necessary to find liability of a private person under section 1983. Wal-Mart alternatively argues that, even if the complaint was sufficient, Murray failed to establish her claim against the store because the evidence did not show a pre-arranged plan between the police and the store. Wal-Mart concludes that the actions of its employees, absent a pre-arranged plan, did not rise to the level of action under color of state law, as required for a successful section 1983 action against a private entity.
 
 
 12
 A complaint need not be articulately drafted in order to adequately allege that private persons are acting under color of state law. See El Fundi v. Deroche, 625 F.2d 195, 196 (8th Cir.1980) (per curiam). Here, Murray's complaint set out a detailed rendition of the events which occurred when she was detained for shoplifting. She alleged that "each and all the acts" which she set forth in her complaint "were done by the Defendants under the color and pretense" of state law. Murray's claim stated that she sustained numerous injuries and damages "[a]s a direct and proximate result of the joint and several conducts [sic] of the Defendants, which constitute violation of Plaintiff's Constitutional rights." Murray's complaint also specifically invoked jurisdiction pursuant to section 1983. These statements more than adequately allege facts sufficient to state a claim against Wal-Mart under section 1983. See id.
 
 
 13
 In order to recover under section 1983, a plaintiff must prove that the defendant deprived him of a constitutional right under color of state law. Adickes v. S.H. Kress & Co., 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970). In a section 1983 action against a private party, a plaintiff will be entitled to relief if he can prove that the private party was "a willful participant in joint activity with the State or its agents" which activity deprived the plaintiff of a constitutional right. Id. at 152, 90 S.Ct. at 1605-06. For example, a store and its employees may be considered to be acting jointly with police when the police will detain accused shoplifters without making an independent investigation, Smith v. Brookshire Bros., Inc., 519 F.2d 93, 94 (5th Cir.1975) (per curiam), cert. denied, 424 U.S. 915, 96 S.Ct. 1115, 47 L.Ed.2d 320 (1976), or pursuant to a customary plan between the store and the police department, Duriso v. K-Mart No. 4195, Division of S.S. Kresge Co., 559 F.2d 1274, 1277 (5th Cir.1977) (per curiam).
 
 
 14
 As we have previously held, state action is present when private security guards and police officers act in concert to deprive a plaintiff of his civil rights, particularly when a state statute authorizes a shopkeeper to detain suspected shoplifters. El Fundi, 625 F.2d at 196. In the case at bar, numerous facts point to the conclusion that Wal-Mart was acting in concert with the local police. Harris, the store manager, stated during his testimony that it is the practice of Wal-Mart to work with the police department in prosecuting shoplifters. Elliot, the store security guard, had telephoned the police after the unfruitful search of Murray's purse and requested "the assistance of an officer" because she had "detained a shoplifter." The police responded, taking Murray into custody.
 
 
 15
 Furthermore, Elliot is also an employee of the police department and has a close relationship with the prosecuting attorney, who apparently made his recommendation to prosecute based on Elliot's word, not upon an independent investigation of the facts. Although no affidavits were executed by any of the Wal-Mart employees, the police and the prosecuting attorney relied on Elliot's incomplete version of the facts to justify detaining, searching, and prosecuting Murray.
 
 
 16
 Finally, Arkansas state law specifically provides that a merchant or his employee may detain a suspected shoplifter to effect recovery of unpurchased goods "in a reasonable manner for a reasonable length of time." Ark.Code Ann. Sec. 5-36-116(a) (1987). This state statute, combined with the concerted actions of Wal-Mart and the local police department, afford ample evidence of willful, joint activity which supports a claim against Wal-Mart under section 1983.
 
 C. Malicious Prosecution
 
 17
 On the issue of probable cause, Wal-Mart contends that because probable cause existed for Murray's arrest and prosecution, Murray's claim for damages for malicious prosecution is barred. The Arkansas Code provides that concealment of unpurchased goods gives rise to a presumption that the actor took the goods with the intention of depriving the owner of them, and a person engaging in such conduct may be reasonably detained without creating civil liability for false arrest, false imprisonment, or unlawful detention. Ark.Code Ann. Secs. 5-36-102(b), 5-36-116(a) (1987). Wal-Mart contends that these statutes operate as a defense to malicious prosecution as well as to the enumerated actions. Wal-Mart claims that the district court should have found that probable cause existed as a matter of law and dismissed the case.[2]
 
 
 18
 Murray argues that Wal-Mart had no probable cause to detain, arrest, or prosecute Murray for shoplifting or theft. While there may have been probable cause for the Wal-Mart employees to initially detain and confront Murray, we agree that no probable cause existed for further detention, or for arrest or prosecution. Probable cause to stop a customer does not necessarily give the merchant probable cause to prosecute. Wal-Mart Stores, Inc. v. Yarbrough, 284 Ark. 345, 681 S.W.2d 359, 362 (1984).
 
 
 19
 Murray proved that there was no cologne in her halter top when she was initially confronted. At that point, the actions of the store employees were no longer "reasonable" so as to be afforded protection under the state statutes. In addition, the employees ignored Wal-Mart's own shoplifting policy. After the employees searched Murray's purse, probable cause became more elusive, and after she was thoroughly searched at the police station and no items were found on her person, Wal-Mart policy dictated that there should be no prosecution.
 
 
 20
 The district court found that Murray was searched without a warrant and without probable cause. The evidence is more than sufficient to support the court's finding of malicious prosecution.
 
 
 21
 D. Intentional Infliction of Emotional Distress
 
 
 22
 Wal-Mart argues that, under Arkansas law, profanity alone does not sufficiently establish intentional infliction of emotional distress.[3] See Tandy Corp. v. Bone, 283 Ark. 399, 678 S.W.2d 312, 315 (1984). While this statement of the law may be accurate, it is inapplicable to this case, which did not merely involve the use of profanity against Murray.
 
 
 23
 Notably, the district court found that both racial slurs and profane language were articulated by Harris and directed toward Murray. Such language was used in front of Murray's daughter and grandchildren, as well as the general public.
 
 
 24
 Furthermore, Harris physically pushed Murray back into the store, even after she warned him of her heart condition. Also, the fact that Wal-Mart continued to detain, search, and prosecute Murray without probable cause and in violation of its own policy smacks of exactly the type of "intentional infliction" to which this cause of action refers. The evidence of the Wal-Mart employees' outrageous behavior toward Murray sufficiently supports the district court's finding of intentional infliction of emotional distress.
 
 III. CONCLUSION
 
 25
 For the foregoing reason, we affirm the district court award of $15,000 in actual damages and $10,000 in punitive damages. Furthermore, because attorney fees are available as part of a successful section 1983 action, we affirm the award of attorney fees in the amount of $7850.
 
 
 
 *
 The HONORABLE GEORGE F. GUNN, JR., United States District Judge for the Eastern District of Missouri, sitting by designation
 
 
 [1]
 The Honorable George Howard, Jr., United States District Judge for the Eastern District of Arkansas
 
 
 [2]
 Wal-Mart also contends that, under Arkansas case law, the advice of the prosecutor to institute a prosecution acts as conclusive evidence of the existence of probable cause and thus is a complete defense to an action for malicious prosecution. See Machen Ford-Lincoln-Mercury, Inc. v. Michaelis, 284 Ark. 255, 681 S.W.2d 326, 328 (1984) (citation omitted). If, however, the evidence tends to show that a defendant did not impartially state all the facts to legal counsel when seeking his advice, then the defendant has no complete defense to a malicious prosecution action by relying on that advice. Parker v. Brush, 276 Ark. 437, 637 S.W.2d 539, 540 (1982). The district court held that Elliot did not disclose all of the material facts to the prosecuting attorney. Elliot's incomplete rendition of the facts negates prosecutorial advice as a defense to this action
 
 
 [3]
 Wal-Mart also argues that the district court erred in awarding damages for intentional infliction of emotional distress, and in awarding punitive damages, because the allegations that Harris used profanity and racial slurs are "unbelievable." The district court, however, had no trouble believing that Harris used "profane language" and "racial slurs." This finding is not clearly erroneous so as to be set aside. See Fed.R.Civ.P. 52(a)