Revised January 24, 2002

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-30710

_____


DEBORAH MORRIS

                                        Plaintiff - Appellant

        v.


DILLARD DEPARTMENT STORES, INC; ET AL
                                        Defendants
DILLARD DEPARTMENT STORES, INC;
LIBERTY MUTUAL INSURANCE CO;
R.W. BROWN; CITY OF BOSSIER CITY

                                        Defendants - Appellees

_____

Appeal from the United States District Court
for the Western District of Louisiana
_____

December 26, 2001

Before KING, Chief Judge, and REAVLEY and JONES, Circuit Judges.

KING, Chief Judge:

        On claims asserting discrimination, unlawful search and

seizure, malicious prosecution, false arrest, false imprisonment,

and intentional infliction of emotional distress, arising from

the detention, arrest and search of the plaintiff on suspicion of

shoplifting, the district court granted summary judgment in favor

of all defendants on all claims.  For the following reasons, we AFFIRM.

## I.  FACTUAL AND PROCEDURAL HISTORY

Plaintiff-Appellant Deborah Morris, an African-American, appeals from the district court's grant of summary judgment in favor of Defendants-Appellees Dillard Department Stores, Incorporated ("Dillard's"), Dillard's insurer, Liberty Mutual Insurance Company ("Liberty"), and police officer R.W. Brown on all constitutional and state law claims brought by Morris.  On March 13, 1998, Morris and a friend, Maxine Crawley, were in Dillard's.  Officer Brown was off-duty that day from his job as a municipal police officer for City of Bossier City ("the City") and working as a private security guard for Dillard's.  Brown wore his police uniform while working as a private guard, as required by the City.  An employee of Dillard's, Meshell Maxey, reported to Dillard's security that she observed a suspected shoplifter.  When Brown responded to Maxey's report, he obtained Maxey's description of what she observed and Maxey's identification of Morris as the suspect.  Maxey's account included that Maxey saw Morris conceal a shirt under her jacket and then replace the merchandise during the time Maxey called for security.  Officer Brown subsequently followed Morris and Crawley through the store for some time and then out to the parking lot. In the parking lot, as Morris and Crawley sat in their car, Brown

2

copied down the car's license plate number and returned to the store. At no point before Brown returned to the store, did he attempt to confront, question, detain, search, or arrest Morris or Crawley. Morris and Crawley subsequently returned to the store and confronted Brown. Brown then arrested Morris, handcuffed her, and led her through the store to the security office where she was held and subsequently searched by a female police officer called to the scene. Morris was transported to the police station and "booked." Officer Brown filled out a municipal police "Incident Report" detailing the eyewitness account Brown had obtained from Maxey, as well as his following and observing Morris, his notation of the license plate, and the subsequent arrest.

Morris filed suit in state court against Dillard's, Liberty, and Officer Brown. The suit was subsequently removed to federal court. Against Dillard's and Liberty, Morris brought claims pursuant to 42 U.S.C. § 1983 (1994), alleging false arrest and unlawful search and seizure in violation of the Constitution. She also alleged a violation of 42 U.S.C. § 1981 (1994), on the basis of her race, of her right to make and enforce contracts, and various state law claims for false arrest, false imprisonment, malicious prosecution, and intentional infliction of emotional distress. Morris also sued Brown in his individual capacity under 42 U.S.C. § 1983 alleging false arrest and unlawful search and seizure. On May 3, 2000, the district court

3

granted summary judgment to all defendants on all claims.[1] Morris now timely appeals the district court's summary judgment in favor of Dillard's and Liberty on the § 1983, § 1981, and state law claims, as well as the court's summary judgment in favor of Brown on the § 1983 claim.

## II.  STANDARD OF REVIEW

This court reviews a grant of summary judgment de novo, applying the same standards as the district court.  See Horton v. City of Houston, 179 F.3d 188, 191 (5th Cir. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986)).  Summary judgment is only proper where no material issue of fact exists as to any element of the claim.  FED.R.CIV.P. 56(c).  Where the non-movant fails to show specific material facts in dispute, summary judgment is appropriate.  Celotex, 477 U.S. at 324.

## III.  § 1983 CLAIM AGAINST DILLARD'S AND LIBERTY MUTUAL

The district court granted summary judgment in favor of Dillard's and Liberty on Morris's § 1983 claim alleging false arrest and unlawful search and seizure in violation of the Fourth

---

[1]  An additional state tort claim of invasion of privacy, as well as claims brought against another Dillard's security guard, Officer Greg Hart, were dismissed at Morris's request and thus are not before this court.

A state law claim of defamation against Dillard's based on Maxey's report to Brown of her concealment of the shirt was first raised in Morris's brief in opposition to defendants' summary judgment motion.  There is no evidence of malice on the part of Maxey, and the district court properly granted summary judgment in favor of Dillard's.

4

Amendment because the court found that Dillard's was not a state actor as a matter of law. As a threshold matter, for a plaintiff to state a viable claim under § 1983 against any private defendant, such as Dillard's or Liberty, the conduct of the private defendant that forms the basis of the claimed constitutional deprivation must constitute state action under color of law. <u>Lugar v. Edmondson Oil Co., Inc.</u>, 457 U.S. 922, 924, 928-32 (1982). The Supreme Court has recently reiterated that the focus of the inquiry into whether a private actor can be subjected to constitutional liability is whether "such a close nexus between the State and the challenged action" exists "that seemingly private behavior may be fairly treated as that of the State itself." <u>Brentwood Acad. v. Tennessee Secondary Sch. Athletic Assoc.</u>, 531 U.S. 288, 295 (2001) (internal quotation omitted).[2] Our sister circuits have noted that the state action doctrine is oft characterized by courts and commentators as "one of the more slippery and troublesome areas of civil rights litigation," one which presents a "paragon of unclarity," <u>Gallagher v. "Neil Young Freedom Concert"</u>, 49 F.3d 1442, 1447

---

[2] The "state action" and "under color of law" requirements are technically distinct yet related requirements, and the difference between them is implicated in a claim of joint action by the state and a private defendant. <u>See</u> <u>Lugar</u>, 457 U.S. at 928-39. Nonetheless, this court has collapsed the separate requirements into a single inquiry in determining when a private merchant may be subject to § 1983 liability as a state actor based on the detention, arrest, or search of one of its customers. <u>See, e.g.</u>, <u>Smith v. Brookshire Bros., Inc.</u>, 519 F.2d 93, 94 (5th Cir. 1975) (per curiam).

5

(10th Cir. 1995) (internal quotations and citations omitted), and that this is "particularly true in the area of off-duty police officers acting as security guards" for a private defendant, such as Dillard's. Chapman v. Higbee Co., 256 F.3d 416, 426 (6th Cir. 2001), reh'g granted, No. 99-3970, 2001 WL 1301202, at *1 (6th Cir. Oct. 17, 2001). The Supreme Court has likewise recognized that the inquiry into whether private conduct bears sufficiently close nexus to the state is highly circumstantial and far from precise. Brentwood Acad., 531 U.S. at 295-96 (stating that "[w]hat is fairly attributable is a matter of normative judgment, and the criteria lack rigid simplicity" and that "[f]rom the range of circumstances that could point toward the State behind an individual face, no one fact can function as a necessary condition across the board for finding state action") (citations omitted).

This court has never before confronted the precise circumstance of this case in the context of a § 1983 claim brought against a private employer defendant, namely, one in which an off-duty police officer is employed as a private security guard and detains, searches or arrests the customer of his private employer subsequent to a report of suspicion made by another employee. However, in five decisions, this court has confronted analogous circumstances where either a merchant employee, or on-duty police officers called to the merchant's premises, have detained, searched or arrested a customer, and the

6

customer has filed a § 1983 claim against the merchant.  In those decisions, this court has developed a consistent doctrine applying a nexus-type test to determine when a private enterprise such as Dillard's may be subject to constitutional liability. See Bartholomew v. Lee, 889 F.2d 62, 63 (5th Cir. 1989); Hernandez v. Schwegmann Bros. Giant Supermarkets, Inc., 673 F.2d 771, 772 (5th Cir. 1982) (per curiam); White v. Scrivner Corp., 594 F.2d 140, 141 (5th Cir. 1979); Duriso v. K-Mart No. 4195 Div. of S.S. Kresge Co., 559 F.2d 1274, 1277 (5th Cir. 1977) (per curiam); Smith v. Brookshire Bros., Inc., 519 F.2d 93, 94 (5th Cir. 1975) (per curiam).  We first developed the test in Brookshire, in which customers brought a § 1983 claim against a merchant after a manager reported suspicion of shoplifting to police, and the police then detained, fingerprinted, and "booked" the customers.  Brookshire, 519 F.2d at 94.  We held that in order to subject the merchant to liability, plaintiffs had to show that the police and the store managers were acting "in concert; that [the private merchant] and the police had a customary plan whose result was the detention in the present case."  Id.  We found the requisite nexus in that case and subjected the merchant to liability where we found that the police and merchant maintained a pre-conceived policy by which shoplifters would be arrested based solely on the complaint of the merchant.  See id. at 94-95.

7

We have refined application of the doctrine since <u>Brookshire</u> in three subsequent decisions, <u>White</u>, <u>Hernandez</u>, and <u>Bartholomew</u>, in which we established that a merchant is not a state actor unless the conduct on the part of a guard or officer giving rise to the claimed deprivation occurred based solely on designation of suspicion by the merchant and was not accompanied by any independent investigation by the officer.  <u>See</u> <u>Bartholomew</u>, 889 F.2d at 63 (declining to find state action on the part of a defendant shopping mall where arresting officers made the arrest of customers causing a disturbance based not only on the request of mall security, but also on independent observation); <u>Hernandez</u>, 673 F.2d at 771-72 (upholding a bench verdict in favor of a merchant on a § 1983 claim where the plaintiff was detained in a store on suspicion of shoplifting, a police officer was called to the scene, the officer performed an independent investigation and arrested the plaintiff); <u>White</u>, 549 F.2d at 142-44 (upholding a bench verdict in favor of a merchant on a § 1983 claim because unlike the police in <u>Brookshire</u>, the police in <u>White</u> had a policy of conducting independent investigations to make determinations to arrest and "did not customarily rely solely on the merchants' accusation").  In our two most recent decisions, <u>Hernandez</u> and <u>Bartholomew</u>, we clarified that the "vice" exposed by this court in our two earliest cases, <u>Brookshire</u> and <u>Duriso</u>, in which we found merchants to be state

8

actors, "was that the police, pursuant to a 'preconceived plan,' would arrest any person merely because he was designated for arrest by the store [employee]." Hernandez, 673 F.2d at 772 (citations omitted). See also Bartholomew, 889 F.2d at 63 (explaining that the "crucial" focus of the inquiry is whether an officer "acted according to a preconceived plan and on the say-so of the private actor, not on the basis of [the officer's] own investigation").

We further clarified in Bartholomew and Hernandez that an officer's partial reliance on a report of suspicion made by a merchant employee will not create state action where the officer additionally performs an independent investigation of the alleged crime. See Bartholomew, 889 F.2d at 63 (finding that merchant was not state actor because, although the officers' determination to arrest was not made "wholly based on any independent observations of the officers," the arresting officer testified that she formed her determination to arrest on the independent basis of "what she observed" regarding the alleged disturbance after she arrived at the mall) (internal quotation omitted). See also Hernandez, 673 F.2d at 771-72. Moreover, we established that interviewing the employee to obtain an eyewitness account can constitute sufficient independent investigation where the officer was not an eyewitness to any conduct constituting an alleged crime. See id. (holding that "[u]nless he were an eye-witness, a police officer could not make any arrest if he could

9

not rely on information provided by citizens who witnessed the events" and that "[s]uch reliance does not convert the informing party into a state actor").  In Hernandez, we noted evidence demonstrating that, although the merchant's "employees called the police," the "officer made his own investigation of the incident: the officer interviewed defendant's employees and plaintiff, wrote out his own report, and made his own determination concerning arrest."  Id. at 772.  We thus held that the merchant was not a state actor.  Id.  Reading all five of this court's decisions beginning with Brookshire together indicates that we will not subject a merchant to § 1983 liability unless an officer has failed to perform independent investigation, and that evidence of a proper investigation may include such indicators as an officer's interview of an employee, independent observation of a suspect, and the officer writing his own report.

Morris relies on Brookshire and Duriso to argue that the district court erred in granting summary judgment to Dillard's. This reliance is misplaced.  Uncontroverted evidence indicates that Officer Brown interviewed Maxey and obtained her eyewitness account of observing Morris concealing a shirt and then returning it.  Morris's own deposition testimony indicates that Brown then followed Morris and Crawley through the store, independently observing them for some time subsequent to Maxey's designation of Morris as a suspect.  It is also uncontroverted that at the time he arrested Morris, Brown filled out his own police incident

10

report detailing his interview of Maxey, detailing his following and observing Morris subsequent to that interview, as well as his copying of the license, the confrontation, and the arrest.[3] Brown further admits that he had made no determination to arrest Morris directly subsequent to Maxey's designation to him of Morris as a suspect, nor after Morris exited the store, but that he waited until after Morris confronted him to arrest her. That testimony underscores that it was not Maxey's designation that formed the sole basis of the arrest. The total evidence fails to evince the "vice" of either Brookshire or Duriso, but rather indicates that Officer Brown performed an independent investigation of the alleged crime that included obtaining Maxey's eyewitness report, independent observation of Morris, and the completion of Brown's own incident report.[4] Under White, Hernandez, and Bartholomew, therefore, Dillard's is not a state actor for the purposes of § 1983 liability.

---

[3] There is further testimony in the record by Maxey that she told Brown not to arrest Morris. However, because this evidence is controverted by Brown's testimony that he has no knowledge of Maxey telling him not to arrest Morris, this evidence cannot be considered in our review of summary judgment. Regardless, such evidence is immaterial to our conclusion that Brown made an independent investigation.

[4] We note further evidence in the record indicating that the City police department may have maintained a policy by which officers were permitted to arrest shoplifters based on no more than the report of suspicion by merchant employees. However, under Bartholomew, any such policy fails to raise a material fact issue where there is uncontroverted evidence that Brown made an independent determination to arrest. See Bartholomew, 889 F.2d at 63.

11

Morris further argues that the fact that Brown's conduct complied with the Louisiana shoplifting statute, LA CODE CRIM. PROC. ANN. art 215 (West 1991), creates a material issue of fact as to whether Dillard's was a state actor.  That statute permits merchants to detain suspected shoplifters and permits "peace officers" to arrest suspected shoplifters based solely on a merchant's "complaint."  LA CODE CRIM. PROC. ANN. art 215.[5]  The Supreme Court has held that a private party's invocation of state legal procedures does not constitute state action where the procedure is permissive and not mandatory.  See Lugar, 457 U.S. at 939 n.21; Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 164-65 (1978).  Moreover, in both White and Hernandez, this court relied on the reasoning of Flagg Bros. and expressly rejected a plaintiff's contention that a merchant's compliance with the Louisiana shoplifting statute creates state action on the part of the merchant because article 215 permits merchant action, but does not compel such action.  White, 594 F.2d at 142-43; see also

---

[5]   The text of article 215 reads in relevant part:

A.(1) A peace officer, merchant, or a specifically authorized employee or agent of a merchant, may use reasonable force to detain a person for questioning on the merchant's premises ... when he has reasonable cause to believe that the person has committed a theft of goods .... (2) A peace officer may, without a warrant, arrest a person when he has reasonable grounds to believe the person has committed a theft of goods held for sale by a merchant .... A complaint made to a peace officer by a merchant or a merchant's employee or agent shall constitute reasonable cause for the officer making the arrest.

12

Hernandez, 673 F.2d at 771-72. Consequently, Morris fails to raise any material issue of fact as to whether Dillard's was a state actor based on the merchant's compliance with article 215.[6] The district court did not err, therefore, in granting summary judgment in favor of Dillard's and Liberty on the § 1983 claim.

## IV. § 1981 CLAIM AGAINST DILLARD'S AND LIBERTY

The district court granted summary judgment in favor of Dillard's and Liberty on Morris's § 1981 claim, alleging that Dillard's interfered with Morris's right to make or enforce a contract with the merchant because of her race. Morris's claim is based on the uncontroverted fact that Dillard's banned Morris from the store for a period subsequent to her arrest. The court found that Morris failed to show the loss of an actual contract

---

[6] Morris further argues that the Eighth Circuit's decision in Murray v. Wal-Mart, Inc., 874 F.2d 555, 558-59 (8th Cir. 1989), in which that court found a merchant to be a state actor, counsels this court to find that Dillard's was a state actor. The court in Murray, however, based its determination in part on that court's finding that arresting officers had failed to perform sufficient "independent investigation" prior to arrest and full prosecution of the suspect. See Murray, 874 F.2d at 559. Although this court might disagree with the determination of the Murray court as to whether an independent investigation adequate to preclude § 1983 liability occurred, the holding of the case is consistent with our doctrine that, absent an independent investigation by an officer, a merchant may under some circumstances be subject to § 1983 liability. Moreover, the Murray court relied additionally on an Arkansas state law permitting merchant detention of shoplifters as a factor creating the required nexus between the state and a merchant, see id., an approach we specifically rejected in White and Hernandez. We find Morris's reliance on Murray unpersuasive.

13

interest and failed to offer any evidence that Dillard's took any action against her based on her race.[7] To sustain a § 1981 claim, Morris must establish three elements: (1) that she is a member of a racial minority; (2) that Dillard's had intent to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute, in this instance, the making and enforcing of a contract. Bellows v. Amoco Oil Co., 118 F.3d 268, 274 (5th Cir. 1997). Moreover, a plaintiff must establish the loss of an actual, not speculative or prospective, contract interest. See, e.g., id. at 275 (denying recovery under § 1981 to a plaintiff who "failed to present any evidence that [the defendant] did in fact interfere with the contract"); Phelps v. Wichita Eagle-Beacon, 886 F.2d 1262, 1267 (10th Cir. 1989) (affirming dismissal of a § 1981 claim where a plaintiff alleged merely "possible loss of future opportunities"). Morris contends that the fact that she was banned from Dillard's following her arrest constitutes the requisite loss of actual contract interest. We agree with the district court, however, that such a ban is insufficient to constitute the loss of an actual contract interest.

_____

[7] Morris contends that the district court erred in finding that Morris failed to offer any evidence of racial discrimination because the court failed to properly consider her motion to compel discovery on the issue of whether Dillard's engaged in a pattern of discrimination. Because we find that the district court did not err in finding that Morris failed to show evidence of the loss of any actual contract interest, we need not address this argument.

14

This court has never confronted a § 1981 claim brought against a merchant in the retail context. Other courts that have considered such claims have consistently rejected them as too speculative where a plaintiff makes allegations of the mere possibility that a retail merchant would interfere with a customer's attempt to contract in the future. See Morris v. Office Max, Inc., 89 F.3d 411, 414-15 (7th Cir. 1996) (rejecting a plaintiff's § 1981 claim asserting that a merchant interfered with his "prospective contractual relations" where the plaintiff had completed a purchase prior to being detained, despite the fact that the plaintiff was examining additional goods with intent to purchase at the time he was detained) (internal quotation omitted); Youngblood v. Hy-Vee Food Stores, Inc., 266 F.3d 851, 853-55 (8th Cir. 2001) (holding that where a plaintiff purchased some beef jerky and was arrested for concealing other goods, the merchant "cannot be said to have deprived [the plaintiff] of any benefit of any contractual relationship, as no such relationship existed" at the time of the arrest because "nothing that happened after the sale created any further contractual duty on [the merchant's] part"); Hickerson v. Macy's Dep't Store at Esplanade Mall, No. CIV. A. 98-3170, 1999 WL 144461, at *2 (E.D. La. Mar. 16, 1999) (holding that a plaintiff was not "prevented from making a particular purchase, or from returning [goods] he had previously bought" and thus granting summary judgment in favor of a merchant because "[t]here is no

15

generalized right under section 1981 to have access to opportunities to make prospective contracts").  In contrasting circumstances, where a customer has engaged in an actual attempt to contract that was thwarted by the merchant, courts have been willing to recognize a § 1981 claim.  See Christian v. Wal-Mart Stores, Inc., 252 F.3d 862, 874 (6th Cir. 2001) ("[W]e have no trouble concluding that [plaintiff] made herself available to enter into a contractual relationship for services ordinarily provided by Wal-Mart: the record reflects that she had selected merchandise to purchase ... and would, in fact, have completed her purchase had she not been asked to leave the store."); Henderson v. Jewel Food Stores, Inc., No. 96 C 3666, 1996 WL 617165, at *3-4 (N.D. Ill. Oct. 23, 1996) (holding that "a § 1981 claim must allege that the plaintiff was actually prevented, and not merely deterred, from making a purchase or receiving service after attempting to do so," and finding a plaintiff's allegation sufficient to sustain a § 1981 claim where the "plaintiff was midstream in the process of making a contract for [a] goods purchase" at a cashier at the time an officer arrested him).  Consequently, to raise a material issue of fact as to her § 1981 claim, Morris must offer evidence of some tangible attempt to contract with Dillard's during the course of the ban, which could give rise to a contractual duty between her and the merchant, and which was in some way thwarted.

Morris fails to offer any such evidence. It is uncontroverted that Morris left Dillard's of her own accord without attempting to make any purchase, or to engage in any other transaction with Dillard's prior to, during, or subsequent to her detention and arrest by Officer Brown. It is likewise uncontroverted that Dillard's banned Morris from the premises after her arrest and that the ban was subsequently lifted. Morris points to no evidence in the record indicating that she made any tangible attempt to purchase, or to return, specified goods at the store, or to enter any other contractual agreement with Dillard's, at any time during the course of the ban. We agree with the district court, therefore, that Morris's allegations based on the ban alone are too speculative to establish loss of any actual contractual interest owed to her by Dillard's. Thus, the district court did not err in granting summary judgment in favor of Dillard's and Liberty on the § 1981 claim.

## V. § 1983 CLAIM AGAINST OFFICER BROWN

The district court granted summary judgment to Officer Brown on Morris's § 1983 claim against him individually, which alleged false arrest and unlawful search and seizure. The court found that Brown is entitled to qualified immunity from suit based on his reliance on article 215, a Louisiana statute that authorizes arrest of a shoplifter where an officer has probable cause for

17

the arrest.  See LA CODE CRIM. PROC. ANN. art 215.[8]  That statute further permits an officer to form probable cause for the arrest based on the "complaint" of suspicion of "theft" made by a merchant's employee.  Id.  The court held that Brown could not have known he was violating Morris's established constitutional right to be free from arrest and search without probable cause.

Police officers, like other public officials acting within the scope of their official duties, are shielded from claims of civil liability, including § 1983 claims, by qualified immunity.[9] See Harlow v. Fitzgerald, 457 U.S. 800, 815-19 (1982).  This court applies a two-step analysis to determine whether an officer is entitled to qualified immunity from federal suit.  First, we determine whether a plaintiff has alleged a violation of a clearly established constitutional right, and second, whether the officer's conduct was "objectively reasonable in light of clearly established law at the time of the alleged violation."  Chiu v.

---

[8]  The statute uses the phrase "reasonable cause" not probable cause.  However, Louisiana courts have recognized that, in the case of a merchant detaining a suspect, article 215 requires something less than probable cause, but an officer is not relieved of the duty to form "probable cause" when making an arrest.  See, e.g., Townsend v. Sears, Roebuck & Co., 466 So.2d 675, 677 (La. Ct. App. 1985) ("'Reasonable cause' under article 215 is not synonymous with probable cause, when a detention [by a merchant], rather than an arrest [by a peace officer] is involved.").

[9]  The parties do not dispute that when Officer Brown arrested Morris, his conduct constituted state action under color of law for the purposes of the § 1983 claim brought against him in his individual capacity.

18

Plano Indep. Sch. Dist., 260 F.3d 330, 343 (5th Cir. 2001) (internal quotations and citations omitted). This court has divided the first prong of this inquiry into three determinations: 1) whether the plaintiff alleges a deprivation of a constitutional right; 2) whether the right was clearly established at the time of the alleged violation; and 3) whether the defendant actually violated that right. See id. The parties do not dispute that Morris has alleged deprivation of her clearly established right to be free from arrest and search without probable cause, or that the right was clearly established at the time of her arrest. The parties only dispute whether Brown had probable cause.

An officer's entitlement to qualified immunity based on probable cause is difficult for a plaintiff to disturb. See Brown v. Lyford, 243 F.3d 185, 190, n.7 (5th Cir. 2001) (holding that "[a] plaintiff must clear a significant hurdle to defeat qualified immunity" and that there "must not even arguably be probable cause for the search and arrest for immunity to be lost") (internal quotation omitted). Thus "if officers of reasonable competence could disagree on whether or not there was probable cause to arrest a defendant, immunity should be recognized." Gibson v. Rich, 44 F.3d 274, 277 (5th Cir. 1995) (citation omitted). It is established law within this circuit and others that an officer not present at the time of an alleged crime may form probable cause sufficient to entitle that officer

19

to qualified immunity where the officer interviews an eyewitness to the alleged crime.  See United States v. Burbridge, 252 F.3d 775, 778 (5th Cir. 2001).  In Burbridge, we held:

> An ordinary citizen's eyewitness account of criminal activity and identification of a perpetrator is normally sufficient to supply probable cause ... "unless, at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation."

Id. (quoting Ahlers v. Schebil, 188 F.3d 365, 370 (6th Cir. 1999)) (internal citations omitted).  See also J.B. v. Washington County, 127 F.3d 919, 930 (10th Cir. 1997) ("[I]f it seems reasonable to the police to believe that the [ordinary citizen] eyewitness was telling the truth, they need not take any additional steps to corroborate the information regarding the crime before taking action.").  Therefore, Brown was reasonably entitled to rely on Maxey's eyewitness account of an alleged theft and her identification of Morris as the suspect to form probable cause to arrest, absent any alleged facts that could have given him reason to question the account.

Morris concedes on appeal that Officer Brown is protected from civil liability due to qualified immunity if an employee made a complaint to him of "theft" of goods forming the basis of probable cause.  Additionally, Morris does not claim that Brown had any reason to question the veracity of Maxey's eyewitness

20

account or identification of Morris as a suspect.[10]  Morris

contends only that no report of theft was made that could have

formed the basis of probable cause.  This contention is contrary

to Louisiana law.

> The Louisiana theft statute at issue reads in relevant part:

> A. Theft of goods is the misappropriation or taking of
> anything of value which is held for sale by a merchant,
> ... without consent of the merchant to the
> misappropriation or taking .... An intent to deprive
> the merchant permanently of whatever may be the subject
> of the misappropriation or taking is essential and may
> be inferred when a person:  (1) Intentionally conceals,
> on his person or otherwise, goods held for sale.

LA REV. STAT. ANN § 14:67.10 (West 1997).

Louisiana appellate courts have, at least twice, interpreted this

statute to mean that a theft includes concealment of goods by a

suspect, regardless of whether the suspect may have subsequently

returned the goods to the merchant prior to exiting the premises.

See Brown v. Hartford Ins. Co., 370 So.2d 179, 180-82 (La. Ct.

App. 1979) (holding that a jury could have found that a store

---

[10]  Morris does contest whether Maxey could have in fact observed Morris conceal a shirt because Morris claims she never concealed any goods on her person.  This contention is immaterial, however.  Whether the crime actually occurred or whether a suspect is eventually convicted is irrelevant to the probable cause analysis.  The inquiry focuses only on what the officer could have reasonably believed at the time based on the relevant law, as well as the facts supplied to him by the eyewitness.  See, e.g., Sorenson v. Ferrie, 134 F.3d 325, 328 n.3 (5th Cir. 1998) ("The Constitution does not guarantee that only the guilty will be arrested.  If it did, § 1983 would provide a cause of action for every defendant acquitted--indeed, for every suspect released.") (internal quotation omitted).

employee had reasonable cause to believe a theft occurred, pursuant to section 14:67, where employees observed the suspect conceal a good in her purse then place the good on a chair beneath her in an attempt to abandon the good prior to exiting the store). The court in Hartford Insurance further held that the theft occurred at the moment of the taking, and the fact that [the suspect] later 'ditched' the [good]" would not only be "irrelevant," but also an "incriminating factor" indicating intent of theft. Id. Likewise, in State v. Ellis, 618 So.2d 616, 617-18 (La. Ct. App. 1993), a Louisiana appellate court held that, pursuant to section 14:67, "[o]ne who takes the property of another, intending at the time of the taking to permanently deprive the owner of that property, is nonetheless guilty of the crime of theft though she later, becoming frightened or having a change of heart, decides to return it and does so." Consequently, under the interpretation of the theft statute adopted by Louisiana appellate courts, it was reasonable for Officer Brown to believe that the conduct described to him by Maxey comprised an allegation of theft and thus, because he obtained an eyewitness report, that he had probable cause to arrest.[11]

_____

[11] Morris claims that four decisions by other courts compel a finding that Brown lacked probable cause. However, all four decisions involve circumstances distinguishable from those in the instant case where courts held that an officer lacked probable cause because the officer ignored evidence, or failed to pursue investigation to find easily obtainable evidence, which

Morris further contends that evidence shows Brown harbored "angry" motives in making the arrest, which motives she contends vitiate Brown's entitlement to qualified immunity. However, because the test for immunity is solely one of objective reasonableness, any "subjective intent, motive, or even outright animus [is] irrelevant in a determination of qualified immunity based on arguable probable cause to arrest, just as an officer's good intent is irrelevant when he contravenes settled law." Mendenhall v. Riser, 213 F.3d 226, 231 (5th Cir. 2000) (citation omitted). Thus, any subjective, even angry, motives on Brown's part are immaterial to our determination that he had probable cause to arrest and was consequently entitled to qualified

---

would have exculpated the suspect. See Lusby v. T.G. & Y Stores, Inc., 749 F.2d 1423, 1431-32 (10th Cir. 1984) (finding lack of probable cause where an arresting officer could have easily ascertained that sunglasses, which the suspect was alleged to have stolen, had been paid for in a prior visit to the store); Baptiste v. J.C. Penney Co., Inc., 147 F.3d 1252, 1256-57 (10th Cir. 1998) (finding a lack of probable cause where a merchant employee alleged to officers that a suspect stole a ring, but a videotape the officers viewed prior to conducting a search clearly indicated that the suspect had not stolen any merchandise); McNeely v. National Tea Co., 94-CA-392 (La. App. 5 Cir. 3/28/95), 653 So.2d 1231, 1234-37 (finding an officer lacked reasonable cause to detain a shoplifter where an employee reported a theft of some batteries, but did not observe any concealment); Murray, 874 F.2d at 559-60 (finding that store employees lacked probable cause to arrest where a suspect demonstrated she had no goods on her person and thus that she failed to commit theft under applicable Arkansas statutes). Evidence shows that Brown did not ignore any facts that would exculpate Morris of theft under Louisiana law. Thus, Morris's reliance on these four decisions is misplaced and unpersuasive.

immunity.  The district court, therefore, did not err in granting summary judgment in favor of Officer Brown on the § 1983 claim.

## VI.  STATE LAW CLAIMS AGAINST DILLARD'S AND LIBERTY MUTUAL

Although the district court granted summary judgment on all of the federal claims, the court nonetheless retained jurisdiction over the pendent state law claims for false arrest, false imprisonment, malicious prosecution, and intentional infliction of emotional distress, and likewise granted summary judgment on those claims in favor of Dillard's and Liberty on the merits.[12]  Morris's claims for false arrest, false imprisonment, and malicious prosecution fail as a matter of law because Brown had probable cause to arrest Morris.[13]  See Tabora v. City of

---

[12]    Ordinarily, the fact that all federal claims have been disposed of counsels in favor of the district court declining to retain jurisdiction over any pendent state law claims, Branson v. Greyhound Lines, Inc. Amalgamated Council Ret. & Disability Plan, 126 F.3d 747, 758  n.9  (5th Cir. 1997) (citation omitted), but dismissal is not mandatory, and the district court has discretion to retain jurisdiction, a decision to which this court defers absent abuse of that discretion.  See McClelland v. Gronwaldt, 155 F.3d 507, 520-21 (5th Cir. 1998).  Since the instant state claims present no novel issues of state law and are easily dispatched, we find that the district court did not abuse its discretion in deciding the claims on the merits and thus, in the interest of judicial economy, we will decide them rather than dismissing them to be pursued in state court.  Cf. Batiste v. Island Records, Inc., 179 F.3d 217, 227-28 (5th Cir. 1999) (finding that a district court abused its discretion in not maintaining jurisdiction over pendent state claims where such claims presented no "complex," "novel [,] or especially unusual questions [of state law] which cannot be readily and routinely resolved by the court").

[13]    The district court held that at the time Brown detained and arrested Morris, he was acting in his official capacity, and not as an employee of Dillard's, and thus that his actions could

<u>Kenner</u>, 94-613 (La. App. 5 Cir. 1/18/95), 650 So.2d 319, 322-23 (holding that an essential element of claims under Louisiana law of false arrest, false imprisonment, and malicious prosecution is a lack of probable cause). Consequently, the district court did not err in granting summary judgment in favor of Dillard's and Liberty on the claims of false arrest, false imprisonment, and malicious prosecution.

Morris's claim for intentional infliction of emotional distress likewise fails as a matter of law because she fails to point to evidence of the level of extreme and outrageous conduct required to sustain the claim. An emotional distress claim under Louisiana law requires that the plaintiff establish three elements: (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that such distress would be substantially certain to result from the conduct. <u>White v. Monsanto Co.</u>, 585

---

not be attributed to Dillard's for the purposes of the false arrest, false imprisonment, and malicious prosecution claims against Dillard's. We find it unnecessary to make any determination regarding the issue of respondeat superior because Morris's claims fail in any event because Brown had probable cause to arrest.

Morris attempts to argue additionally on appeal that because the report made by Dillard's employee Maxey led to Morris's arrest, Dillard's may be liable on a theory of respondeat superior for Maxey's conduct. Because this argument based on Maxey's conduct is raised for the first time on appeal, we decline to address it. <u>See, e.g.</u>, <u>Rogers v. Hartford Life & Accident Ins. Co.</u>, 167 F.3d 933, 944 n.8 (5th Cir. 1999).

So.2d 1205, 1209 (La. 1991).[14]  Louisiana courts, like courts in other states, have set a very high threshold on conduct sufficient to sustain an emotional distress claim, and the Louisiana Supreme Court has noted that "courts require truly outrageous conduct before allowing a claim ... even to be presented to a jury."  See, e.g., Nicholas v. Allstate Ins. Co., 99-2522 (La. 8/3/00), 765 So.2d 1017, 1022, 1024-25 (adopting the approach of the RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1977)).  The conduct described in this record does not rise to the level of extreme and outrageous conduct required to support a claim.  The district court did not err, therefore, in granting summary judgment in favor of Dillard's and Liberty on the emotional distress claim.

## VII.  CONCLUSION

For the foregoing reasons, the district court's summary judgment in favor of Dillard's and Liberty on Morris's claims against them brought pursuant to 42 U.S.C. § 1983 and § 1981, as well as on her state law claims of false arrest, false imprisonment, malicious prosecution, and intentional infliction

---

[14]     Morris contends that the district court erred in granting summary judgment on her emotional distress claim because the court ignored evidence she submitted, in the form of medical records from a treating psychiatrist, indicating that Morris suffers Post Traumatic Stress Disorder as a direct result of her arrest.  Assuming, arguendo, that the district court erred in improperly considering evidence regarding the severe distress element, Morris's claim nonetheless fails because she fails to point to sufficient evidence establishing the element of extreme and outrageous conduct.

26

of emotional distress, is AFFIRMED.  The district court's summary judgment in favor of Officer Brown on Morris's claim against him brought pursuant to 42 U.S.C. § 1983 is likewise AFFIRMED.