BOUDIN, Chief Judge,
concurring in part and dissenting in part.
Derived from the 1866 Civil Rights Act, section 1981 secures against racial discrim *107 ination, among other things, the right “to make and enforce contracts.” 42 U.S.C. § 1981 (1994 & Supp. V 1999). Read narrowly, this phrase could be applied only to outright refusals to sell or deal. Read as broadly as possible, it might be taken to ban all racial discrimination by retail stores (to speak only of the present context) affecting present or prospective customers. The circuit courts have rejected both positions.
The narrow view was rejected when Congress overruled Patterson v. McLean Credit Union, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), in 1991 by defining contract rights more broadly than did the original statute. See Rivers v. Roadway Express, Inc., 511 U.S. 298, 302, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994); H.R.Rep. No. 102-40(1), at 141, reprinted in 1991 U.S.C.C.A.N. 549, 670. Even apart from the amendment, racial harassment short of an outright refusal to sell could clearly frustrate an ability to contract. If the police had been called by Radio Shack to arrest Garrett in this case before he made his purchases — and the summons were racially motivated — a section 1981 claim would be stated.[1]
Yet the circuit courts with only slight differences in emphasis have also rejected the broadest construction of section 1981 as encompassing all racial harassment by retail stores. E.g., Hampton v. Dillard Dep’t Stores, Inc., 247 F.3d 1091, 1118 (10th Cir.2001). Instead, they have all insisted that section 1981 claims be tied fairly closely to hindrance of a specific effort to purchase. This view has been fostered by the statute’s “to make ... contracts” language and by assumptions as to its main thrust. No doubt it also reflects a concern that too broad a reading would produce countless law suits based on minor or imagined discourtesies inflicted on customers by retail employees.
The search for an intermediate position has led, perhaps inescapably, to circuit court decisions that seem pettifogging, turning on how close the plaintiff was to making a purchase, Morris v. Dillard Dep’t Stores, 277 F.3d 743, 752 (5th Cir.2001), and whether the use of the bonus coupon given at the sale was part of the contractual relation, Hampton, 247 F.3d at 1104. Such distinctions do not correspond to human realities and courts sometimes ignore their logic, e.g., by affording a section 1981 remedy to the customer who is badly harassed but makes the purchase. See Williams v. Cloverland Farms Dairy, Inc., 78 F.Supp.2d 479, 485-86 (D.Md.1999); see also Christian, 252 F.3d at 872.
The precedents in other circuits, fairly described by the panel, say that for a section 1981 violation, there must be interference with a specific contract, actual or immediately contemplated; the abstract possibility of future purchases at some indefinite time is not enough. But Radio Shack’s action in sending policemen to Garrett’s home to investigate shoplifting after his purchase, if Garrett was singled out solely because he was black, could be deemed a sufficient interference to trigger liability. See Youngblood v. Hy-Vee Food Stores, Inc., 266 F.3d 851, 856 (8th Cir.2001) (R. Arnold, J., dissenting).
What one describes as an “interference” with the right to “make” a contract and to “enjoy” its “benefits” depends on judicial construction. Section 1981 is now (post-Patterson) commonly used to remedy racial discrimination in the continuing employment relationship, see Danco, Inc. v. Wal-Mart Stores, Inc., 178 F.3d 8, 13 (1st Cir.1999), yet to do so is to interpolate *108 reasonable expectations: employment contracts (do not normally say that freedom from harassment is a contracted for benefit of employment. Similarly, one who makes a purchase at Radio Shack would not ordinarily expect that a no-doubt humiliating visit from the police, prompted by racial bias on the store’s part, would directly follow.
Under the amendment, protection does not stop with the formation of the contract. Rivers, 511 U.S. at 302, 114 S.Ct. 1510; Banco, 178 F.3d at 13. The fact that Garrett left the store with his purchases should not exhaust all that he is entitled to expect from (to use the amendment’s term) “the enjoyment of all benefits ... of the contractual relationship.” 42 U.S.C. § 1981(b). Imagine, merely as an example, that the purchase had been on credit, that Garrett had been slow to pay, and that (solely because of racial prejudice) the store as a matter of policy had pursued its claim against him with special harshness.
Finally, even on the panel’s own reading of the statute, the section 1981 claim ought to be remanded. Garrett has alleged that he intended to return some of what he purchased. This claim was belated and could certainly be challenged, but it ought not be rejected out of hand on a motion to dismiss. See Hickerson v. Macy’s Dep’t Store, 1999 WL 144461 (E.D.La.1999) (returning an item constitutes a modification of a contract). And, if Garrett had a specific intent to return the item, his ardor could certainly have been cooled by a visit from the police once Garrett learned that he had been singled out by the store because of his race.
Assuredly, problems exist in the use of section 1981 to superintend retail shopping: as in employment cases, lurid claims can be easily made, but less easily disproved, based on alleged oral remarks. Often (unlike employment cases), there is no economic damage. And section 1981 is not blunted by devices used in Title VII, such as agency exhaustion and a short statute of limitation for agency complaints. But courts can take some protective measures; in particular, not every minor slight or suspicion by a store has to be treated as interference.
On the other side of the scale, this case, if the allegations are assumed to be true, is not a trivial matter. A police investigation of someone for shoplifting and a consequent search of one’s home is a major indignity and not merely an imagined slight. And, if Garrett’s behavior was no different than that of other shoppers who visited Radio Shack at the same time (save as to his race), and if he alone was identified to the police, an inference of racial discrimination is more than speculation.
Despite great respect for the panel majority and for the very able district judge, my view is that the section 1981 claim as well as the defamation claim should be remanded for further proceedings.

. See Henderson v. Jewel Food Stores, Inc., 1996 WL 617165 (N.D.Ill.1996); cf. Christian v. Wal-Mart Stores, Inc., 252 F.3d 862, 873 (6th Cir.2001).