# IN THE COURT OF APPEALS OF IOWA

No. 16-0287
Filed May 3, 2017

**SUSAN ACKERMAN,**
        Plaintiff-Appellant,

**vs.**

**STATE OF IOWA, IOWA WORKFORCE DEVELOPMENT, TERESA WAHLERT, TERESA HILLARY, and DEVON LEWIS,**
        Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg, Judge.


        A former administrative law judge challenges the dismissal of her tort claim of wrongful discharge in violation of public policy.  **REVERSED AND REMANDED.**


        William W. Graham and Wesley T. Graham of Graham, Ervanian & Cacciatore, L.L.P., Des Moines, for appellant.

        Thomas J. Miller, Attorney General, and Jeffrey C. Peterzalek, Matthew T. Oetker, and Susan J. Hemminger, Assistant Attorneys General, for appellees.


        Heard by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**TABOR, Judge.**

After being suspended from her position as an administrative law judge (ALJ), Susan Ackerman sued her employer, the State of Iowa and Iowa Workforce Development, as well as three individuals.[1]  Ackerman's pleadings eventually included the tort of wrongful discharge in violation of public policy, among other claims.  The State moved to dismiss the wrongful-discharge tort, contending it was reserved for at-will employees and therefore not available to Ackerman whose employment was subject to a collective bargaining agreement (CBA).  The district court granted the State's motion, and Ackerman successfully sought an interlocutory appeal.

Ackerman divides her appellate argument into two parts, contending: (1) the district court should not have considered the CBA's terms in granting the State's motion to dismiss and (2) the district court incorrectly decided she was prohibited from suing in tort for wrongful discharge because she was covered by the CBA rather than being an at-will employee.  We need not tackle Ackerman's first contention because the district court's ruling rests on her status as a contract employee and not on the CBA's terms.  But because her status as a contract employee does not prevent her from pleading the claim of wrongful discharge, we reverse the dismissal order and remand for further proceedings.

## I.      Facts and Prior Proceedings

Ackerman worked as an ALJ with Iowa Workforce Development in its unemployment insurance appeals bureau from 2000 until she was fired for

---

[1] The individual defendants are former Workforce Development director Teresa Wahlert, as well as Teresa Hillary and Devon Lewis.  In this opinion, we will refer to the defendants collectively as the State.

alleged misconduct in January 2015.[2]  During a suspension of several weeks before the termination of her employment, Ackerman filed suit against the State, alleging, among other things, that her employer retaliated against her after she testified at a hearing before the Iowa Senate Government Oversight Committee about "pressures put on the ALJs . . . to render decisions in favor of employers." *See* Iowa Code § 70A.28(2) (2015) (prohibiting an employer from retaliating against a state employee for disclosing information to a member or employee of the general assembly "if the employee reasonably believes the information evidences a violation of law or rule, mismanagement, a gross abuse of funds, [or] an abuse of authority").

On November 18, 2015, Ackerman filed her third amended petition, which contained eight counts, including a claim for wrongful discharge in violation of public policy.  The State filed a motion to dismiss the wrongful-discharge count on November 30, arguing that because Ackerman was covered by a CBA, she could not bring a wrongful-discharge claim.  In its motion, the State provided a hyperlink to the Iowa Department of Administrative Services website, which published the most up-to-date CBA between the State of Iowa and the American Federation of State, County and Municipal Employees (AFSCME),[3] and asserted the district court could take judicial notice of the document.  The State also attached a copy of an AFSCME grievance form Ackerman had filed.

---

[2] "Because we are reviewing the grant of a motion to dismiss for failure to state a claim, we accept all well-pleaded facts as true."  *Hedlund v. State*, 875 N.W.2d 720, 722 (Iowa 2016).

[3] This CBA referenced on the website became effective on July 1, 2015, nearly six months after Ackerman's termination.  Neither party raises this as an issue on appeal.

In her response, Ackerman acknowledged being "subject to a CBA that allows for certain limited employee protections and remedies," but she argued that status did not prohibit her from bringing a tort claim and that her claim survived a motion to dismiss because any analysis of whether she had an adequate remedy under the CBA could not be determined "at this early stage in the litigation."

After hearing argument from the parties, the district court granted the motion to dismiss. The court concluded: "To the extent that the [CBA] provides for a remedy relating to wrongful discharge, [Ackerman] is not allowed to apply the narrow exception Iowa courts have reserved for at-will employment to her current situation." Ackerman sought interlocutory review, which the supreme court granted. The supreme court then transferred the case to us.

## II.    Scope and Standard of Review

We review the grant of a motion to dismiss for correction of legal error. *See Dier v. Peters*, 815 N.W.2d 1, 4 (Iowa 2012). "A motion to dismiss should only be granted if the allegations in the petition, taken as true, could not entitle the plaintiff to any relief." *King v. State*, 818 N.W.2d 1, 9 (Iowa 2012) (citation omitted); *see also* Iowa R. Civ. P. 1.421(1)(f).

## III.    Analysis

Ackerman first argues it was impermissible for the district court to consider the terms of the CBA in the context of the State's motion to dismiss. *See Dier*, 815 N.W.2d at 4 (stating on a motion to dismiss, the court generally does "not consider facts contained in either the motion to dismiss or any of its

accompanying attachments" (citation omitted)). The State contests Ackerman's preservation of error on this claim.

Assuming, but not deciding, Ackerman preserved error on her opening contention, we may resolve this appeal without addressing whether the district court could properly take judicial notice of the CBA's contents. In its order dismissing Ackerman's wrongful-discharge claim, the district court did not purport to take judicial notice of the CBA or otherwise delve into the terms of the document. Instead, the district court referred generally to Ackerman's employment being "subject to a collective bargaining agreement, negotiated for her and others in her position." Moreover, at oral argument before our court, counsel for both Ackerman and the State agreed the district court's ruling relied not upon any specific provisions of the CBA but upon the CBA's existence (which was acknowledged in Ackerman's petition) and her status as an employee who could be discharged for "just cause" only (a fact conceded by Ackerman). *See Grimm v. US W. Commc'ns, Inc.*, 644 N.W.2d 8, 12 (Iowa 2002) ("We address issues presented in a motion to dismiss based on facts apparent on the face of the petition or conceded by the plaintiff."). Because the record presents no real controversy between the parties on the judicial-notice issue, we decline to reach its merits. *See Hartford-Carlisle Sav. Bank v. Shivers*, 566 N.W.2d 877, 884 (Iowa 1997) ("This court has repeatedly held that it neither has a duty nor the authority to render advisory opinions.").

We focus instead on the headliner question: is the tort of wrongful discharge in violation of public policy available to an individual whose

employment is governed by a CBA? A brief history of the common law recognizing this cause of action helps structure our analysis.

Nearly thirty years ago, the Iowa Supreme Court recognized the wrongful-discharge tort in *Springer v. Weeks & Leo Co.*, 429 N.W.2d 558, 559 (Iowa 1988). *Springer* held the cause of action exists "when the discharge serves to frustrate a well-recognized and defined public policy of the state." 429 N.W.2d at 560. Just two months later, the court was confronted with a related issue: "whether an employee covered by a [CBA] providing a contractual remedy for discharge without just cause may maintain such an action." *Conaway v. Webster City Prods. Co.*, 431 N.W.2d 795, 796 (Iowa 1988).

In *Conaway*, two plaintiffs employed under a CBA containing a just-cause provision and "a grievance and arbitration procedure to settle disputes, including those involving employees' discharges," filed petitions alleging their discharge violated the CBA and public policy. *Id.* The district court, acting without the guidance of *Springer*, had predicted the supreme court would recognize the tort of wrongful discharge but disposed of the claims by finding the action was preempted by section 301 of the Federal Labor Management Relations Act (FLMRA), 29 U.S.C. § 185(a) (granting federal courts subject matter jurisdiction over suits involving CBA violations). *Id.* Accordingly, on appeal, the supreme court directly addressed only the preemption issue, finding because the wrongful-discharge claims at issue were "independent of the [CBA]," they were not preempted by the FLMRA. *Id.* at 799. The court continued: "This is so because resolution of these [wrongful-discharge] actions does not require an interpretation of the [CBA]." *Id.* The court concluded:

> The plaintiffs' actions are recognizable state tort claims. They can be resolved without resorting to an interpretation of the [CBA], regardless of the discharge for just cause provision in the agreement. . . . Under this holding, the plaintiffs properly sued in state court without first going through [the grievance and arbitration procedures provided by the CBA].

*Id.* at 800.

Seven years later, the supreme court again found the FLMRA did not preempt a wrongful-discharge claim. *Sanford v. Meadow Gold Dairies, Inc.*, 534 N.W.2d 410, 414 (Iowa 1995). The court, assuming the viability of Sanford's wrongful-discharge claim, reasoned: "Sanford's retaliatory discharge claim rests on our holdings that public policy is violated when an employee, even an employee at-will, is discharged as a result of seeking workers' compensation benefits," *id.* at 412, and: "[T]here is really no argument concerning the terms or effect of the union contract. The union contract served only as background for the issues here. All controverted issues involved routine state law," *id.* at 414. *Cf. McMichael v. MidAm. Energy Co.*, No. 12-0597, 2012 WL 5356138, at *5 (Iowa Ct. App. Oct. 31, 2012) (finding arbitration decision pursuant to CBA, which determined just cause for termination, did not preclude employee's wrongful-discharge claim because "[r]esolution of the [wrongful-discharge] claim does not require interpretation of any provision of the CBA").

Despite the underlying facts in these preemption cases, the Iowa Supreme Court has never directly decided whether the tort of wrongful discharge is available to an individual employed under a CBA. But following *Sanford*, a federal district court faced the question now before us. *See Beekman v. Nestle Purina Petcare Co.*, 635 F. Supp. 2d 893, 919–21 (N.D. Iowa 2009). Relying on

*Conaway*, the court held the plaintiff could assert the claim.[4]  *Id.* at 921; *see also Vails v. United Cmty. Health Ctr., Inc.*, No. C11-4048-LTS, 2012 WL 6045941, *9–11 (N.D. Iowa Dec. 5, 2012) (citing *Conaway* and *Sanford* for the proposition a written employment agreement did not preclude a plaintiff from pursuing a wrongful-discharge claim); *Ferrell v. IBP, Inc.*, No. C 98-4047, 2000 WL 34031485, at *2 (N.D. Iowa May 4, 2000) ("As the Court has stated in two prior Orders, the tort of wrongful discharge is available to both at-will employees and contract employees.").  *But see Gries v. AKAL Sec., Inc.*, No. 06-CV-33-LRR, 2007 WL 2710034, at *35 n.14 (S.D. Iowa Aug. 27, 2007) (noting being an at-will employee is "an obvious requirement for [a] public policy claim"); *Clark v. Eagle Ottawa, LLC*, No. 06-CV-2028-LRR, 2007 WL 581650, at *5 (N.D. Iowa Feb. 20, 2007) (asserting plaintiff must demonstrate status as an at-will employee to state a claim for wrongful discharge).

Then, in 2014, a federal district court certified a similar question to our supreme court: "Does Iowa law allow a contractual employee to bring a claim for wrongful discharge in violation of Iowa public policy, or is the tort available only to at-will employees?"  *Hagen v. Siouxland Obstetrics & Gynecology, P.C.* (*Hagen I*), 964 F. Supp. 2d 951, 956 (N.D. Iowa 2013); *see also Hagen v. Siouxland Obstetrics & Gynecology, P.C.* (*Hagen II*), No. 13-1372, 2014 WL 1884478, at *1 (Iowa May 9, 2014).  Because the supreme court was equally

---

[4] Because the plaintiff claimed she was discharged for pursuing workers' compensation claims, the court also relied upon Iowa Code section 85.18 (2007) ("No contract, rule, or device whatsoever shall operate to relieve the employer, in whole or in part, from any liability created by [the workers' compensation] chapter except as herein provided."). *Beekman*, 635 F. Supp. 2d at 921.

divided on a preliminary point that was dispositive of the case, it declined to answer the larger question.[5]  *Hagen II*, 2014 WL 1884478, at *1.

Without direct guidance, the federal district court predicted the Iowa Supreme Court would hold the tort of wrongful discharge was available to both at-will and contract employees.  *Hagen v. Siouxland Obstetrics & Gynecology, P.C.* (*Hagen III*), 23 F. Supp. 3d 991, 1004 (N.D. 2014); *see also Hagen I*, 964 F. Supp. 2d at 969–72.  The court cited *Conaway* and *Sanford* and reasoned: "Had the Iowa Supreme Court intended to limit the wrongful discharge tort to at-will employees, it could have avoided the preemption issue and simply held that the plaintiffs could not maintain a wrongful discharge claim as contractual employees.  But it did not . . . ."  *Hagen I*, 964 F. Supp. 2d at 970.  The federal district court also addressed the policy behind the wrongful-discharge tort:

> [T]he purpose . . . is best served by applying the tort to both contractual and at-will employees. . . .  Whether an employer's choice to fire an employee violates Iowa's 'communal conscience' is completely independent of whether the fired employee was at-will or contractual.  The firing in either case harms 'the entire community'—i.e., the public—which has an interest in discouraging employers from firing employees in violation of Iowa's public policy.

*Id.* at 971.

The federal circuit court reversed, finding that because the employee had a contractual remedy for wrongful discharge and no statute clearly prohibited his discharge for the conduct at issue, his sole remedy was a breach-of-contract claim.  *Hagen v. Siouxland Obstetrics & Gynecology, P.C.* (*Hagen IV*), 799 F.3d 922, 930–31 (8th Cir. 2015).  The circuit court did not consider either *Conaway* or

---

[5] The court was divided on the question whether the employee participated in protected conduct that could be the basis for a wrongful-discharge claim.  *Hagen II*, 2014 WL 1884478, at *1.

*Sanford* and instead focused on Iowa's wrongful-discharge cases that involved non-contractual, at-will employees: "The Supreme Court of Iowa initially recognized this tort as a 'narrow exception[] to the employment at-will doctrine' and has consistently described the tort in those terms." *Id.* at 928 (citation omitted). The court opined the supreme court's refusal to address the district court's certified question "strongly suggest[ed] that the district court erred in defining the question as being whether the tort protects 'contractual employees' in general." *Id.* at 929. Instead, the circuit court concluded, the availability of the wrongful-discharge tort depends upon the way the employment contract "address[es] the question of termination." *Id.*

Relying on *Conaway*, 431 N.W.2d at 796–800, Ackerman argues, under Iowa law, employees covered by a CBA have a recognizable tort claim for wrongful discharge, regardless of the specific terms of the CBA. She contends barring her claim would be against public policy because it "would allow employers to contractually eviscerate the protections provided by the tort claim, and give employees working under a CBA less protection against violations of public policy than at-will employees." Finally, she asserts that "at the very least," it was inappropriate for the district court to dismiss her claim at this stage because the question whether the CBA provides the same protections as the wrongful-discharge tort is a question of fact.

The State labels *Conaway* inapplicable because in that case the supreme court contemplated only the issue of preemption under section 301 of the FLMRA. The State defends the dismissal of Ackerman's claim by citing a string of supreme court cases describing wrongful discharge in violation of public policy

as an "exception to the employment-at-will doctrine," *see, e.g.*, *Jasper v. H. Nizam, Inc.*, 764 N.W.2d 751, 761 (Iowa 2009), and extrapolates from those descriptions that the tort should exist exclusively for at-will employees.[6]

The State's reasoning is flawed. To assume because *Jasper* and its ilk hold at-will employees may sue for wrongful termination in violation of public policy then employees who do not work at will may not sue for wrongful termination in violation of public policy "is to commit the fallacy of the inverse (otherwise known as denying the antecedent): the incorrect assumption that if P implies Q, then not-P implies not-Q." *See NLRB v. Noel Canning*, 134 S. Ct. 2550, 2603 (2014) (Scalia, J., concurring in the judgment); *see also Posen Const., Inc. v. Lee Cty.*, 921 F. Supp. 2d 1350, 1364 (M.D. Fla. 2013) ("The problem with denying the antecedent [P] is that there is a logical disconnect between the antecedent [P] and the consequent [Q] such that the predictive behavior of the consequent [Q] is not accurately linked to the nonoccurrence of the antecedent [P]."). The willingness of the Iowa Supreme Court to carve out a narrow exception to the at-will doctrine for firings that violate public policy does not logically foreclose Iowa courts from recognizing a wrongful-discharge tort for contract employees.

The State asserts the federal circuit court correctly forecast that our supreme court would not recognize a wrongful-discharge tort for contract employees because the exception for at-will employees was "narrowly circumscribed to only those policies clearly defined and well-recognized *to*

---

[6] The State does not argue Ackerman's claim is preempted by Iowa Code section 70A.28 or precluded by any arbitration decision under the CBA.

*protect those with a compelling need for protection from wrongful discharge.*"
See *Hagen IV*, 799 F.3d at 929 (quoting *Dorshkind v. Oak Park Place of Dubuque II, L.L.C.*, 835 N.W.2d 293, 303 (Iowa 2013) (emphasis added)). We are not convinced the passage italicized by the circuit court supports its conclusion that a contract employee could not sue for wrongful discharge in violation of public policy. Our supreme court's circumscription has involved the type of public policies that qualify for protection, not the type of employees protected.[7] *See Dorshkind*, 835 N.W.2d at 303 (explaining supreme court will "cautiously identify policies to support an action for wrongful discharge"). The *Dorshkind* language does not signal the Iowa Supreme Court's intent to ration tort-law remedies to at-will employees because they have a more "compelling need for protection from wrongful discharge" than the need of contract employees for protection against being fired in violation of public policy.

Moreover, *Hagen* involved an individual employment agreement, not a CBA. Unlike an individual employment agreement,

> decisions to enter [CBAs] are made by majority vote. Thus, a number of employees who may have voted not to enter into the agreement are forced to accede to the will of the majority. The employee subject to a [CBA] whose individual right has been violated, is forced to submit his grievance under an agreement

---

[7] In addition, we find *Harvey v. Care Initiatives, Inc.*, 634 N.W.2d 681, 682 (Iowa 2001), which the *Hagen IV* court cites at length, to be distinguishable. In *Harvey,* the Iowa Supreme Court held "there is no cause of action in Iowa for retaliatory discharge of an independent contractor for filing a complaint against a care facility." 634 N.W.2d at 682. While some of the reasoning in the opinion, which both the State and the *Hagen IV* court highlighted, suggests the existence of a contract removes some of the need for the wrongful-discharge claim, the outcome in *Harvey* also depended upon the "fundamental," "long-standing" distinction between independent contractors and employees. 634 N.W.2d at 683–84. Considering the differences between CBAs and individual contracts as well as between independent contractors and employees, we conclude *Harvey* does not control the outcome here.

which was never designed to protect individual workers, but to balance the individual against the collective interest.

*Coleman v. Safeway Stores*, 752 P.2d 645, 652 (Kan. 1988), *disapproved of on other grounds by Gonzalez-Centeno v. N. Cent. Kan. Reg'l Juvenile Det. Facility*, 101 P.3d 1170, 1175 (Kan. 2004). Accordingly, employees subject to a CBA have the same "compelling need for protection from wrongful discharge" as at-will employees.

We are unpersuaded by the circuit court's decision in *Hagen IV*, which failed to recognize either *Conaway* or *Sanford*—cases in which our supreme court recognized the validity of a wrongful-discharge cause of action brought by contract employees.[8] *See Conaway*, 431 N.W.2d at 800 (describing wrongful-discharge claims of individuals employed under a CBA as "recognizable state tort claims"); *see also Sanford*, 534 N.W.2d at 412 (describing wrongful-discharge claim of individual employed under a CBA as "rest[ing] on our holdings that public policy is violated when an employee, even an employee at-will, is discharged as a result of seeking workers' compensation benefits"). Accordingly, we conclude Ackerman's status as an individual employed under a CBA does not prevent her

---

[8] As Ackerman points out, this finding is consistent with several other jurisdictions that have considered this issue. *See, e.g.*, *Davies v. Am. Airlines, Inc.*, 971 F.2d 463, 468–69 (10th Cir. 1992) (applying Oklahoma law); *Midgett v. Sackett-Chi., Inc.*, 473 N.E.2d 1280, 1283–84 (Ill. 1984); *Coleman*, 752 P.2d at 652; *LePore v. Nat'l Tool & Mfg. Co.*, 557 A.2d 1371, 1372 (N.J. 1989); *Retherford v. AT&T Commc'ns of Mountain States, Inc.*, 844 P.2d 949, 959–60 (Utah 1992); *Smith v. Bates Tech. Coll.*, 991 P.2d 1135, 1141 (Wash. 2000).

from pleading the tort of a wrongful discharge made in retaliation for testifying before the Iowa Senate Government Oversight Committee.

**REVERSED AND REMANDED.**